Application of MONTANA–DAKOTA UTILITIES CO. OF MINNEAPOLIS, MINNESOTA, for Authority to Increase Rates for Electric Service in the State of North Dakota.

MONTANA–DAKOTA UTILITIES COMPANY, Appellant,

v.

PUBLIC SERVICE COMMISSION of the State of North Dakota, Respondent.

No. 7950.

Supreme Court of North Dakota.

Nov. 10, 1961.

706

Cox, Pearce & Engebretson, Bismarck, and Earl H. A. Isensee, Minneapolis, Minn., for appellant.

Leslie R. Burgum, Atty. Gen., John C. Stewart, Commerce Counsel, Bismarck, Theodore Kellogg, Sp. Asst. Atty. Gen., for respondent.

TEIGEN, Judge.

This is a rate case. The matter was initiated in 1957 when the Utility filed a schedule of proposed rate increases with the Public Service Commission and gave notice as provided by Section 49–0505, NDRC 1943. The Commission failed to suspend the rates proposed in the new schedules filed beyond the automatic suspension period provided by statute where the Commission orders a hearing (Section 49–0506, NDRC 1943). The automatic suspension period expired October 4, 1957, and this court held that the trial court was without power to restrain collection of the increased rates after that date. Thus the new rate schedules, as proposed by the Utility, became effective. State Public Service Commission vs. Montana-Dakota Utilities Co., N.D., 89 N.W.2d 94. The Commission, however, continued the investigation it began when it ordered the hearing. On January 24, 1958, it made and entered its order disallowing the proposed rate schedules.

The Utility appealed from the order of the Commission to this court. Application of Montana-Dakota Utilities Co., N.D., 102 N.W.2d 329, 331. In that appeal the Utility argued the Commission was without jurisdiction to make its order of January 24, 1958, because it failed to order an additional suspension of the rates and allowed the proposed schedule to become the legally established rates. However, this court held:

"The failure of the Public Service Commission to order a suspension of a proposed change in the rates, to be charged by a utility, pending a hearing upon the reasonableness of such rates, does not deprive the commission of its jurisdiction to continue the hearing or change the nature thereof."

In discussing Section 49–0506, supra, Judge Burke said:

"This statute relates only to the suspension of a change, in the categories named, pending hearing and decision. If the procedure prescribed by the statute for the suspension of rates is not followed, the result is that the rates are not suspended pending hearing and decision and the rates become

effective, not as finally and legally established rates, but as conditionally legal rates subject to the decision in the pending hearing."

After disposing of the jurisdictional question, this court decided the issues. The case was ordered returned to the Commission for the purpose of "making a new computation of the rate of return for 1956 and a new finding with respect to reasonable rates to be charged."

After judgment on remittitur, the Commission promptly made its order on remand. It complied with the judgment on remittitur in finding a rate of return of 4.6 plus percent. It did not modify the rate base previously found and affirmed by this court. It found, as it had in its first order, that the Utility had not submitted evidence to show that the rate being earned by the Company on its North Dakota electric operations was insufficient to "enable the company to earn a return on the value of its property employed for electric service in North Dakota equal to that generally being made at the same time and in the same general part of the country on investments in other business undertakings which are attended by corresponding risks and uncertainties; nor was there any substantial evidence introduced at the hearing to show that such return was insufficient to enable the company to pay its costs of electric operations, contribute its proportionate share toward the payment of dividends, maintain adequate surplus, attract needed capital and provide adequate services to its customers."

In the absence of the required evidence, the Commission reviewed the financial history of the Company for a period of seven years. It found, as it had in its first order, that annual increases in income had kept pace with the annual increases in expenses and rate base. It held there was no proof or reason to believe that this automatic adjustment of increased income to increased rate base and expenses would not continue and, therefore, if the rates complained of had yielded a fair return in 1956, there was no proof that they would not continue to do so in the foreseeable future.

On the question of reasonable return to the Utility, the Commission did not change its position. It held the burden was on the Utility to show that the proposed new rates are just and reasonable and that the Utility had failed to carry this burden. It held the rates previously established by the Commission's order are presumed fair and reasonable until proven to the contrary. It found the evidence establishes on the basis of past experience, including the trend established from such experience, that the return was reasonable and would continue to be so in the foreseeable future. It ordered a re-establishment of the original rate schedules as it had provided in its first order.

The Utility appealed from the order of the Commission to the district court. The district court affirmed the Commission's order and the Utility has appealed to this court and demands trial de novo.

The Utility in this appeal argues four points. It states the case must be remanded to the Commission because: (1) The Commission did not consider actual operating results for 1957, 1958, and 1959; (2) It considered and based its decision, in part on evidence which is not a part of the record; (3) It did not make a new finding with respect to reasonable rates to be charged, as directed by this court. It has not found that 4.6 percent is a reasonable rate of return; and (4) If it is determined the Commission's order on remand contains a finding that 4.6 percent is a reasonable rate of return, then the courts should remand the case because, as a matter of law, a rate of return of 4.6 percent is inadequate and unreasonable.

We will consider the points raised by the appellant in the order set forth above.

■ In support of its first point the Utility argues an unusual situation exists in

this case. Three years had passed since the test year and, therefore, the Utility is entitled to have experience substituted for prophecy; that the proposed rate schedule had been in effect since October 4, 1957; that the actual experienced operating results for the years 1957, 1958, and 1959 were available; that since the Commission's order of January 24, 1958, the increase in rates has been collected under a stay bond and that a substantial sum of money, the difference between the old and the new rates, has been collected under bond. This money, it argues, belongs either to the Company or to the rate payers, or it belongs in part to each of them. It argues it cannot, therefore, be said that the Utility has no interest in the funds held under bond; that anything less than a consideration of these pertinent facts (operating results of 1957, 1958, and 1959) would be a denial of due process of law and that the Commission's failure to call an additional hearing for the purpose of adducing this additional evidence was arbitrary, unreasonable, and capricious.

We cannot see that the Utility has a vested interest in the additional funds collected under bond and that there was a denial of due process of law by the failure, on the part of the Commission, to hold an additional hearing after remand. The rates being collected by the Utility were conditionally legal rates, subject to the decision in the pending hearing. Application of Montana-Dakota Utilities Co., supra. These rates were higher than the rates approved by the Commission's order of January 24, 1958. The Utility was permitted to collect the additional charges, the difference between the rates approved by the Commission's order and those proposed which had become conditionally legal, only because it had obtained a stay of the Commission's order pursuant to provisions provided by statute. It had no vested interest in the additional funds collected during the pendency of the appeal. Any interest which the Utility has in those funds would not vest until a final determination is made and then only if the final determination is favorable to the Utility.

■ Following remand the Commission, by letter, requested the Utility to furnish a statement showing the operating results of the electrical department for 1957, 1958, and 1959. The Utility answered, by letter, stating it was willing to supply this information. Before the information could be submitted, the Commission issued its order. The Utility argues the action on the part of the Commission indicates the Commission must have felt such information was material. The letter was not in the form of a notice calling an additional hearing and it is not so argued. The letters referred to are attached as an exhibit to the Utility's motion in the district court to remand the record to the Commission for the purpose of having such evidence adduced, under the provisions of Section 28–32–18, NDCC.

The motion was denied on the grounds that neither of the alternative statutory requisites was shown to the satisfaction of the court. (1) That where it was shown the Utility had not petitioned for a rehearing and had not exhausted its administrative remedies, there was an absence of showing that there were reasonable grounds for the failure to have adduced such evidence in the hearing or proceeding had before the Commission; and (2) That there was no showing that the proposed evidence was rejected or excluded by the Commission. The order denying the petition for this remand is not argued in this court to be error. We agree, however, that the court was correct in its ruling.

Another exhibit attached to the motion purports to be the comparative operating statement of the electric plant of the Utility for the years 1956, 1957, 1958, and 1959, heretofore referred to. It shows a rate of return of 4.63 percent for 1956. This computation is made on the basis of the Commission's original finding as modified by the court's former opinion. It discloses a rate of return of 5.20 percent for 1957,

4.98 percent for 1958, and 4.65 percent for 1959. The revenue for the purpose of the statement was computed on the basis of the old rate schedules.

■ A cursory examination discloses a steady increase in revenue and operating expenses for the four years reported, but it also shows an abrupt increase in the rate base. The rate base was increased over six and one-half million dollars, approximately one-half of which was added to the rate base in each of the years 1958 and 1959. The rate of return was consistently over 4.63 percent in each of the subsequent years. It indicates company progress in its electric division. If it is the purpose to show that a declining trend has developed in the rate of return, such trend has not brought the rate of return below that found by the Commission to be reasonable. Therefore, the exhibit is not material to support a claim for increased rates. If all of the cost of a new plant has been added to the rate base in 1959, which is indicated from the statements, it would appear that the rate of return for 1960 will increase over 1959. We think, therefore, the court could have rejected the petition for remand on the further basis that the proponent has failed to show the materiality of the evidence proposed.

Upon the former appeal in this case, we found that certain additions which the Commission had made to the Utility's income were not justified by the evidence. In all other respects, the findings of the Commission were approved. A computation of the ratio of income to rate base, upon the basis of our findings, disclosed that the rate of return for the test year had been 4.6 plus percent per annum instead of 5.7 plus percent per annum as found by the Commission. Since we had no power to determine in the first instance whether the evidence submitted by the Utility had established that a return of 4.6 plus percent per annum and the rates which produced it were unreasonable, we remanded the case to the Commission for a consideration of this question.

We did not order or suggest that the case should be reopened and an additional hearing held. Pursuant to the remand the Commission, upon the basis of the opinion of this court, the evidence already in the case, and its previous findings, found that the evidence in the case did not establish that a return of 4.6 plus percent per annum and the rates which produced that return were unreasonable.

■ The Utility urges that it was error for the Commission to make this finding and conclusion without reopening the case and giving it an opportunity to offer evidence of its experience subsequent to the original hearing in the case. The converse of this contention was raised in Northern States Power Company vs. Public Service Commission, 73 N.D. 211, 13 N.W.2d 779. Upon the first appeal of the cited case (see Northern States Power Company vs. Board of Railroad Commissioners, 71 N.D. 1, 298 N. W. 423), this court remanded the case to the Public Service Commission with directions to make certain specified changes in its decision. Upon remand the Commission reopened the case, held hearings, and made changes in its decision, in addition to those which were required by the remand. This procedure was challenged and we held that the Commission had the discretionary power to reopen a case upon remand under the provisions of Section 4609c32, Supplement to the Compiled Laws of 1925, now Section 49–05–09, NDCC. The fact that the Commission has the discretionary power to reopen the case does not mean that it must exercise that power. Here the Commission decided to make no changes in its decision other than those which were required by this court upon remand. These changes were not made pursuant to the power granted by Section 49–05–09, NDCC, but by direction of this court and no rehearing or notice to the Utility was required for that purpose.

The Utility further argues that the Commission's failure, after its request to await the arrival of the reports, was arbitrary,

unreasonable, and capricious, indicating a willingness on the part of the Commission to disregard the facts. The fact still remains, after the Commission issued its order on remand, that the Utility, in spite of the occurrence of events, did not petition for a rehearing as it might have done pursuant to Section 28–32–14, NDCC, for the purpose of making an attempt to have such evidence adduced if it felt it was material.

■ We hold the omission on the part of the Commission to call an additional hearing following remand was not an abuse of discretion, nor did it deny the Utility due process of law.

■ The Utility next argues the case must be remanded to the Commission because it considered and based its decision, in part, on evidence which is not a part of the record. It refers to paragraph five of the Commission's findings of fact in the order on remand and quotes it, in its brief, as follows:

"In addition to this favorable evidence, (referring to records of the company as a whole) the records of this Commission indicates that company earnings records have met the important test of investor approval. Between 1950 and the end of 1956 capital and surplus had increased from $19,-756,659 to $41,186,623, and a long-term debt had increased from $27,316,797 to $42,484,896. These figures also disclose a significant improvement in the capital structure by the reduction of the ratio of debt.

"This evidence shows that the company's earnings have been improving steadily since 1950, and that in 1956 it was at or near its peak for the period. It also appears reasonable to assume that if the company records had shown deterioration in 1956 as against former years, that the company would have put such records in evidence."

An examination of the findings of fact contained in the original order of the Commission, under date of January 24, 1958, discloses a similar finding when it is stated, in part, as follows:

"Official notice is taken of the annual reports of the Company which are filed with this Commission and reference is also made to Exhibit 2 in this case and these show that capital and surplus of the Company has increased from $19,-756,659 at December 31, 1950 to $41,-186,623 at December 31, 1956, long term debt from $27,316,797 to $42,484,896, indicating; * * *."

Conclusions are then drawn similar to that set forth in the order on remand. The original order was appealed from and the opinion is reported in Application of Montana-Dakota Utilities Co., supra. Upon that appeal, neither the findings of fact nor the evidence upon which it was founded was challenged. In that case it was held that the method adopted by the Commission, in view of the state of the evidence, was approved; that the burden was on the Utility to show that the proposed new rates were just and reasonable (Section 49–05–06, NDCC), and that the Commission's conclusions were justified upon the evidence submitted. Those findings, because of the former appeal, are now res judicata.

The Utility's third argument is that because the Commission did not make a new finding with respect to reasonable rates to be charged, as directed by the court, it must be remanded. It states the Commission did not find that 4.6 percent is a reasonable rate of return.

With respect to this matter, the Commission made the following findings and the following conclusion:

"That the rate of return earned by said utility for its North Dakota electric operation for the year 1956 on the basis of evidence submitted at the hearing, was 4.6% + without regard to any

addition thereto resulting from the value of the use of owned or rental space of the utility for merchandise advertising display purposes, the value of which was not proved.

\* \* \* \* \* \*

"The evidence does not show that the rates authorized to be charged under the order of the Commission dated December 8, 1948, did not provide the company with a fair return in 1956 and, on the contrary, indicates that the return was reasonable and would continue to be so for the foreseeable future."

On the basis of these findings and conclusions, this argument is not well taken.

Lastly, the appellant argues that if the court should determine that the Commission's order on remand contains a finding that 4.6 percent is a reasonable rate of return, then the court should remand the case to the Commission because, as a matter of law, a rate of return of 4.6 percent is inadequate and unreasonable.

■■ It argues the only legislative expression in North Dakota of the minimum level of utility rates is to be found in Section 49–06–07, NDCC, in which the Commission is authorized, under certain circumstances, to prescribe temporary rates sufficient to provide a return of not less than 5 percent per annum upon the original cost, less accrued depreciation of the physical property of the public utility used and useful in the public service. It argues this provision was enacted in 1937 when general economic and business conditions permitted rates at levels which were perhaps lower, certainly not higher, than in recent years. This might be persuasive argument except that the same law also provides in Section 49–06–09 that when the final rates fixed are less than the temporary rates, the public utility shall pay or remit to each of its patrons such sum as he has paid to such utility over and above the amounts that would have been paid during such time had the rates fixed been in effect during the period that the temporary rates were in effect. The latter provision is persuasive argument that it constitutes legislative expression that permanent rates may produce a rate of return of less than 5 percent. We see no merit in appellant's argument.

■ The legislature has delegated to the Public Service Commission the power to fix utility rates which shall be reasonable. Section 49–02–03, NDCC. This section provides that to fix new rates, the Public Service Commission, after the noticed hearing, must first find the existing rates are unreasonable, unjust, insufficient, unjustly discriminatory or in violation of law. This the Commission in this case found it could not do on the state of the evidence. The Commission found, in accordance with the holding of this court in the former case, that the rate of return was 4.6 plus percent. It is now the claim of the Utility that such a rate of return is unreasonable as a matter of law. In support of this argument, it urges informally that this court should take judicial notice of certain evidentiary material not a part of the record in this case. The respondent Commission does not resist this argument but urges the court to take judicial notice of certain additional evidentiary material. The appellant Utility argues that if the court considers the material it referred to, it must find a rate of return of 4.6 percent is unreasonable as a matter of law. The respondent Commission argues that if the court takes judicial notice of the additional material it has referred to, the court must determine that a rate of return of 4.6 plus percent is reasonable as a matter of law.

The material referred to in the respective arguments consists of such matters as Consumer Price Index of the Bureau of Labor Statistics as reported in Commerce Clearing House Labor Law Reporter, Union Contracts Arbitration Volume; a pamphlet published by the United States Government Printing Office entitled: 86th Congress, 2d Session—Economic Indicators, December

1960, prepared for the Joint Economic Committee by the Council of Economic Advisers; tabulations of bond and preferred stock yields appearing in the Special Feature Section of Moody's Public Utility Manual—1960; Commerce Clearing House Utility Law Report-States carrying decisions of electric utility rates from January 1, 1956, to date, and as additional material it is urged by the respondent that we consider the yields of public utility common stocks for the period of 1948 to 1960, shown on another page of said Moody's Manual; 1961 World Almanac showing Federal Power Commission figures on growth of electric energy production over a thirty year period and its reference to technical improvement and plant construction devices, improving the efficiency of heat recovered from fuel, improvements reducing transmission line losses and many labor saving devices; the 1953 edition of Encyclopedia Americana and the 1947 and 1959 additions of the Encyclopedia Britannica pertaining to increasing efficiency in the electric industry and the economics achieved by modernization and showing a virtually uninterrupted downward trend of electric rates in the United States.

Evidence of the type or kind referred to in the arguments of counsel is not to be found in the record made before the Commission nor the record considered by the district court. The first attempt to introduce this matter is on the appeal to this court. We cannot consider this material as evidence.

This is a rate case. Original jurisdiction is in the Public Service Commission. See Title 49, NDCC. Appeals are authorized by Sections 49–05–12 and 49–05–15, NDCC. Both sections provide that appeals shall be taken as prescribed by Chapter 28–32, NDCC, which is the Administrative Agencies Uniform Practice Act. This Act provides that appeals from administrative agencies to the courts shall be confined to the record filed with the court. Section 28–32–19, NDCC. The statutes are explicit

relative to the administrative agencies' duty to certify and file with the court the entire proceedings before the agency. Section 28–32–17, NDCC. The Administrative Agencies Uniform Practice Act is a comprehensive measure purporting to prescribe the procedure on hearings before administrative agencies and on appeals from the determination of such agencies. It does not contemplate that any additional evidence may be received or considered by the court.

After a careful consideration of the evidence, including the entire record certified to us, we cannot say that the Public Service Commission, in denying the proposed increased schedule of rates, exceeded its regulatory and supervisory powers conferred upon it by law. There is no showing that such decision or determination was not in accordance with law or that it is in violation of the constitutional rights of the appellant. There is no showing that the provisions of the Administrative Agencies Practice Act pertaining to procedure have been violated, or that the rules or procedure of the Public Service Commission have not afforded the appellant a fair hearing. The evidence is sufficient to support the findings of fact and the conclusions and decisions of the agency are supported by findings of fact made by it.

The burden was on the Utility. Application of Montana-Dakota Utilities Company, supra. The Commission's conclusion was justified upon the evidence submitted. If more complete and detailed evidence would show the contrary, the default in the proof is attributable to the party which had the burden of proof. Application of Montana-Dakota Utilities Company, supra.

We find no reversible error in the record and, therefore, the judgment of the district court affirming the Public Service Commission's order dated May 26, 1960, is affirmed. The district court in its order for judgment on remittitur is directed to provide anew the time and manner of refund by the Utility to its customers of the moneys collected in

excess of the rates as schedules authorized by the Commission's order of January 24, 1958.

SATHRE, C. J., and BURKE, MORRIS and STRUTZ, JJ., concur.