TRI–COUNTY ELECTRIC COOPERA-
TIVE, INC., Protestant and Appellee,

v.

Richard ELKIN et al., Respondents,

and

Otter Tail Power Company, Respondent
and Appellant.

Civ. No. 9025.

Supreme Court of North Dakota.

Dec. 4, 1974.

Rehearings Denied Dec. 20, 1974.

Fabian E. Noack, Carrington, for protestant and appellee.

Ray H. Walton, Sp. Asst. Atty. Gen., Public Service Commission, Bismarck, for respondents.

Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, and Field, Arvesen, Donoho, Lundeen & Hoff, Fergus Falls, Minn., for respondent and appellant.

VOGEL, Judge.

This appeal is one of a continuing series involving disputes between rural electric cooperatives, which are organized primarily to provide electricity to residents of rural areas, and stockholder-owned utilities, which provide electricity primarily to municipalities which have granted them franchises.

Typically, the suits arise from disputes as to which supplier of electricity is entitled to serve a customer in a rural area near a municipality where the investor-owned utility holds a franchise. This is such a case.

The customer in question, LeRoy L. Kendall, owned property about one-third mile

south of the city limits of Jamestown. The area between his property and the city limits was owned by others and was undeveloped. Kendall applied to Otter Tail Power Company, which holds the only franchise to supply electricity within the city limits of Jamestown, for electric service, and Otter Tail made application to the Public Service Commission for a certificate of public convenience and necessity allowing it to serve the customer. When notice of the application was given to Tri-County Electric Cooperative, Inc., the rural electric cooperative serving the area surrounding Jamestown, it promptly filed objections with the Public Service Commission, which held a hearing upon the opposing contentions of the parties and subsequently issued a two-to-one decision (one commissoner dissenting) in favor of Otter Tail Power Company, authorizing it to serve Kendall. The cooperative appealed to the district court of Stutsman County, and the decision was reviewed by the trial judge under the Administrative Agencies Practice Act, Chapter 28–32, North Dakota Century Code. The trial judge reversed the holding of the Public Service Commission, holding that its decision was "arbitrary, capricious, and unreasonable." Otter Tail Power Company thereupon appealed to this court from the judgment of the district court.

## THE FACTS

There is little dispute as to the facts. In addition to those stated above, it is pertinent to note the present electric distribution systems in the area in question and their ownership. Pertinent findings of fact by the Public Service Commission, upon which there is little or no disagreement, follow:

"V

"On April 21, 1970, the Commission granted Otter Tail a temporary order to extend service to the Kendall lots for the beginning of construction. The manner of serving the Kendall lots proposed by Otter Tail was to extend its facilities from its transmission line which runs in a northerly direction generally along the eastern boundary of the SE/4 of Section 2, Township 139 North, Range 64 West, a distance of approximately 240 feet to a service pole located approximately 62 feet inside the Kendall property. Total cost for installation of facilities to the Kendall property is approximately $400.00. The extension described herein will be of a temporary nature and a permanent installation will be placed in service as the area is developed.

"VI

"At the present time, Otter Tail serves two customers in the portion of Block 2 which lies within the city limits and another one lying just to the east of Block 2, outside the City. In addition, in Block 1 (which is outside the city limits), Otter Tail has served what was the Lowry farmstead since 1951. Otter Tail also serves a residence in Block 3 (also outside the city limits), and has an additional service to a pump and barn in Block 10. With the exception of service in Block 10, all of Otter Tail's loads in the Lowry Subdivision are located east of Highway 281. Distribution facilities owned by Otter Tail in the Lowry Subdivision which are the closest to the Kendall lots are those in place on the east side of Highway 281, located in Block 4, approximately 1,200 feet northwest of the Kendall property.

"VII

"Tri-County Electric Cooperative, Inc. is ready, willing and able to serve the Kendall location from its distribution line running along and just south of the south boundary of the SE/4 of Section 2, Township 139 North, Range 64 West, which is also the south boundary of Lowry's Subdivision. The cooperative's line was constructed in the early 1950's and is within 73 feet of the closest point of the Kendall

property. Tri-County would propose to extend its distribution system by a service drop north across First Street to the Kendall property at an approximate cost of $250.00. Tri-County has three other customers along the southern boundary of Lowry's Subdivision, the first having been extended service shortly after the construction of the distribution line of the cooperative on the south side of the Subdivision. The second customer, located about 1,000 feet west of Highway 281, was connected by the cooperative in 1963, in Lot 8 of Block 11 of the Subdivision, and the third customer was connected in 1969, also about 1,000 feet west of Highway 281 in what is now Lot 22 of Block 12. The cooperative has no loads in the Subdivision on the east side of Highway 281. Tri-County also has a line in place, constructed sometime in 1967, which runs in a northerly direction along the west boundary of Lowry's Subdivision, thence in an easterly direction in Block 9, terminating on the east side of that Block. The line constructed in Block 9 is not energized and has served no load since its construction, but the cooperative is being paid a minimum billing for having the line in place.

"VIII

"In the four township area surrounding the contested load herein, Tri-County has some 304 connects. However, considering the area included in the four surrounding townships, many of the cooperative's lines and services are too remote to have a bearing on the instant case. However, the cooperative has many more loads in the rural area herein than the utility does."

Other findings of fact by the Public Service Commission, upon which there is dispute, follow:

"IX

"There is no substantial evidence whether the Kendall load would be an economical addition to either the system of Otter Tail Power Company or to that of Tri-County Electric Cooperative, Inc. However, this load will be served at the residential rate by Otter Tail Power Company and it is expected to yield approximately $240.00 annually in revenue to the utility. There is no evidence that the extension proposed to be made by the cooperative would be lower than its average system investment per customer, the evidence offered by the cooperative tending to show that the length of the extension would be shorter than the extension per consumer in its system.

"X

"There is no substantial evidence of record that the service or system of Otter Tail Power Company is more reliable or superior to that of the Protestant.

"XI

"The customer prefers to be served by Otter Tail Power Company, but would accept service from the cooperative, having no serious objections to its service. However, in this case, with the lines of the competing suppliers being in such close proximity to the area to be served, customer preference must be given greater weight than where the location of the respective lines is at a greater distance from one another.

"XII

"While three blocks in the northern portion of Lowry's Subdivision have been annexed into the City of Jamestown, there is no substantial evidence that the balance of the Subdivision, or even the area in which the Kendall property is located, will be annexed into the City of Jamestown in the forseeable future.

"XIII

"The service to the Kendall property by Otter Tail Power Company will conduce

to the orderly and efficient development of electric service in the portion of Lowry's Subdivision located on the east side of Highway 281.

## "XIV

"Public Convenience and Necessity requires that the Kendall property be served by Otter Tail Power Company."

The cooperative, disputing finding No. IX, points to its evidence that its proposed extension is much shorter than the average length of line per customer on its system, that it has lost a few customers, and that its economic viability depends upon retention of a sufficient number of customers.

The cooperative and the utility agree that both obtain the bulk of their electricity for the area in question from a substation owned by the Bureau of Reclamation located a short distance from the tract in dispute. The cooperative also points out that its line in the immediate area is "sectionalized," which, it asserts, promotes reliability. The cooperative further objects to the statement of the Public Service Commission that "customer preference must be given greater weight than where the location of the respective lines is at a greater distance from one another," pointing out that there is no statutory or decisional or other authority for such statement. The cooperative further objects to the conclusions contained in so-called "findings of fact" Nos. XIII and XIV, asserting that there are no facts to support those statements.

■ It should be noted that North Dakota law, for reasons set forth by the late Chief Justice Strutz in Montana-Dakota Utilities Co. v. Johanneson, 153 N.W.2d 414, 422 (N.D.1967), requires that public utilities obtain certificates of public convenience and necessity to extend their electric distribution lines beyond the corporate limits of a municipality, but such certificates are not required for extensions by rural electric cooperatives, which are operated without profit, are controlled by their members, and are required to return to their members any excess of receipts over expenses and reserves.

The statute regulating the relationships between public utilities and rural electric cooperatives in North Dakota is generally referred to as the "Territorial Integrity Law," originally enacted as Chapter 319, Session Laws 1965. That statute was construed in Montana-Dakota Utilities Co. v. Johanneson, supra, and Section 3 of Chapter 319 was declared unconstitutional. The balance of Chapter 319 now is codified as Sections 49–03–01, 49–03–01.1, 49–03–01.3, 49–03–01.4, and 49–03–01.5, N.D.C.C.

Section 3 of Chapter 319, which, as we have said, was declared unconstitutional, provided that the Public Service Commission should not

"issue its order or a certificate of public convenience and necessity to any electric public utility to extend its electric distribution lines beyond the corporate limits of a municipality . . . unless the electric co-operative corporation with lines or facilities nearest the place where service is required shall consent in writing to such extension by such electric public utility, or unless, upon hearing before the commission, called upon notice, it shall be shown that the service required cannot be provided by an electric co-operative corporation. Such certificate shall not be necessary if the public service commission approves an agreement between a public utility and the rural electric co-operative serving the area which includes the station to be served and which agreement designates said station to be in an area to be served by the public utility."

This section was held unconstitutional "as an unlawful delegation of legislative authority" to the cooperatives; that is, it was held that the cooperatives were given the unregulated discretion to decide whether the certificate should be granted by the Public Service Commission.

When Section 3 was declared unconstitutional, the legislative directions to the Public Service Commission were eliminated from the body of the Act, leaving no criteria upon which the Public Service Commission could make its decisions. The deficiency was supplied by this court in Application of Otter Tail Power Co., 169 N.W.2d 415 (N.D.1969), where it was stated that "customer preference should be considered" and

> "there are a number of other factors which also must be considered . . . These factors include: the location of the lines of the suppliers; the reliability of the service which will be rendered by them; which of the proposed suppliers will be able to serve the area more economically and still earn an adequate retu·n on its investment; and which supplier is best qualified to furnish electric service to the site designated in the application and which also can best develop electric service in the area in which such site is located without wasteful duplication of investment or service." 169 N.W.2d 415, at 418.

These criteria are discussed further in Application of Montana-Dakota Utilities Co., 219 N.W.2d 174 (N.D.1974).

## SCOPE OF REVIEW

■ The scope of review of the district court is set forth in Section 28–32–19, N.D. C.C., which specifies that the court

> "shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law, or that it is in violation of the constitutional rights of the appellant, or that any of the provisions of this chapter [28–32] have not been complied with in the proceedings before the agency, or that the rules or procedure of the agency have not afforded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact."

We have held that the same rules apply to our review of the action of the district court. O'Brien v. North Dakota Workmen's Compensation Bureau, 222 N.W.2d 379 (N.D.1974); Application of Northern States Power Co., 171 N.W.2d 751 (N.D.1969).

■ In ruling upon whether the findings of fact made by the agency are "supported by the evidence," we have held several times that the substantial-evidence rule is the rule we will follow. O'Brien v. North Dakota Workmen's Compensation Bureau, 222 N.W.2d 379 (N.D.1974); Suedel v. North Dakota Workmen's Compensation Bureau, 218 N.W.2d 164 (N.D.1974); Ambroson v. North Dakota Workmen's Compensation Bureau, 210 N.W.2d 85 (N.D. 1973); George E. Haggart, Inc. v. North Dakota Workmen's Compensation Bureau, 171 N.W.2d 104 (N.D.1969); Williams Electric Cooperative, Inc. v. Montana-Dakota Utilities Co., 79 N.W.2d 508 (N.D.1956).

■ The public utility has the burden of proving that public convenience and necessity requires or will require the extension of its lines, as prayed for in its application. We held in Application of Otter Tail Power Co., 169 N.W.2d 415, 418 (N.D.1969):

> " . . . before a public utility shall be permitted to extend its lines into certain areas, it must show that public convenience and necessity reasonably requires such extension."

## FACTORS CONSIDERED

We come now to a capitulation of the evidence upon which the Commission made the determination which the district court held was arbitrary and capricious. We will divide the discussion (as the Commission, the trial court, and the parties have done) into the factors for consideration specified in Application of Otter Tail Power Co., *supra*.

### 1. Customer Preference

■ The Commission found that the customer had a preference for one supplier,

but no objection to the other. While we have previously said that customer preference should be considered, we never have held that it is controlling. Application of Otter Tail Power Co., *supra*; Application of Northern States Power Co., 171 N.W.2d 751 (N.D.1969). Certainly, customer preference has nothing to do with selection of a supplier of electricity inside a municipality such as Jamestown, where only one supplier is franchised. In such places the customer must accept service from the franchised supplier unless he chooses to generate his own electricity or go without. In rural areas, our decisions indicate, customer preference is a minor consideration. It cannot prevail where economic factors, such as relative costs and wasteful duplication, provide other criteria for choice. As we said in Application of Montana-Dakota Utilities Co., 219 N.W.2d 174, 181 (N.D.1974):

" . . . customer preference does not govern the Commission in its decision but subjects the customer's preference for a regulated public utility service to an inquiry and decision by the Commission on the question of public convenience and necessity."

Customer preference, therefore, invokes consideration by the Public Service Commission, but it is not to be a controlling factor. In holding that customer preference was to be given weight in its determination (even more weight than in other cases because of the relatively short lines involved), the Commission erred; but understandably so, since its decision antedated our decision in Application of Montana-Dakota Utilities Co., *supra*.

It is the *public* convenience and necessity, after all, with which the Commission is concerned, not private preference. See Tri-City Motor Transportation Co. v. Great Northern Ry. Co., 67 N.D. 119, 270 N.W. 100 (1936), quoting 42 C.J. Motor Vehicles, Section 121, page 687, as follows:

"The convenience and necessity which the law requires to support the public service commission's order for the establishment or extension of . . . service is the convenience and necessity of the public as distinguished from that of an individual or any number of individuals, and this is the primary matter to be considered in determining what constitutes such public convenience and necessity in a particular case, and the propriety of granting a certificate to that effect."

### 2. Location of the Lines of the Suppliers

■ Otter Tail's nearest *distribution line* is approximately 1,200 feet away at its nearest point. It has a *transmission line* about 240 feet away, and presently is supplying *temporary* service from the transmission line by use of a surplus or obsolescent transformer, at a cost of approximately $400, which cost contains no allowance for the value of the transformer. The cooperative has a *distribution line* 73 feet from the nearest point of the Kendall property, and it could supply service from that line at a cost of $250, which would include the cost of a transformer and the cost of the service drop. It seems obvious from this that the cost considerations are in favor of the cooperative, and Otter Tail's attempted justification is based upon the highly unusual and temporary expedient of using a transmission line for distribution purposes. Even then, the cooperative's distribution line is closer and the cost of electric service provided by the cooperative would be less.

### 3. Reliability of Service

■ The Commission found, and the evidence supports the finding, that the two suppliers are equally reliable.

### 4. Which Will Serve More Economically and Earn an Adequate Return?

■ The evidence does not support the statement of the Commission that "there is no substantial evidence whether the Kendall load would be an economical addition to either the system of Otter Tail Power Company or to that of Tri-County Electric Cooperative, Inc." On the contrary, the cooperative introduced evidence showing that the

density of its system is 1.25 patrons per mile, while only 73 feet of line would be constructed to serve the customer in the present case. It also showed that it had suffered a slight decline in number of consumers the previous year, and that the number of its customers has a bearing on the financial stability of its system. From these facts it seems obvious that the addition of the customer to its system would improve the economic feasibility of the system, particularly since the customer intended to establish a home and a business, and perhaps a motel, on the premises, thereby adding a substantial and presumably profitable load to the system.

### 5. Relative Capacities To Serve at the Site Designated

As stated above, the evidence shows that both suppliers obtain their power from the same nearby source, and there is no justification to choose one over the other in this respect.

### 6. Development Without Wasteful Duplication of Investment or Service

As the findings of fact show, the area in question has been served by the cooperative in the past. The cooperative has other customers in the area who are nearer and more numerous than customers of Otter Tail. Its distribution lines are nearer and are permanent, whereas Otter Tail proposes to serve this customer by a temporary connection to a transmission line.

### LACK OF LEGAL AND FACTUAL BASIS FOR P.S.C. DECISION

■ Otter Tail's argument that it should be favored because it will provide for a more orderly development of electric service in the area depends entirely upon the assumption that the owners of the property between the Kendall property and the city of Jamestown will (1) develop their property within a reasonable time, (2) take service from Otter Tail Power Company, (3) after obtaining the approval of the Commission, and (4) do so in such a way as to allow Otter Tail to develop the area without duplication of lines of the cooperative, although the cooperative, in the absence of any certificate of convenience and necessity issued to a public utility by the Public Service Commission for the area in question, is entitled to serve the property. As the Commission properly found, there is no basis from the evidence for making any assumptions as to future development of the area or annexation thereof by the city of Jamestown. We therefore conclude that there is no evidence in the record upon which to base an ultimate decision that Otter Tail can serve the Kendall property without wasteful duplication of investment or service.

■ Since this and all other factors favor the cooperative, or favor neither the utility nor the cooperative, there is no evidence in the record to justify the Commission's conclusion that public convenience and necessity requires the issuance of a certificate to Otter Tail.

■ Counsel for the utility asks us to take "judicial notice" of recent developments in the area surrounding Jamestown, including the area here in dispute. We are limited, of course, to the record made before the Public Service Commission at the time of the hearing several years ago. In another Public Service Commission case, Application of Montana-Dakota Utilities Co., 111 N.W.2d 705, 712 (N.D.1961), a similar request was made:

" . . . [the appellant] urges informally that this court should take judicial notice of certain evidentiary material not a part of the record in this case."

In response, we said:

"Evidence of the type or kind referred to in the arguments of counsel is not to be found in the record made before the Commission nor the record considered by the district court. The first attempt to introduce this matter is on the appeal to this court. We cannot consider this material as evidence." 111 N.W.2d 705, at 713.

Even if it should be true that the area in question will eventually be annexed to the city of Jamestown, that eventuality has been provided for by law insofar as the orderly continuance or transfer of electric service systems is concerned. The cooperative could continue to serve its customers until such time as its property in the annexed area is acquired by the franchised utility by negotiation or eminent domain. Montana-Dakota Utilities Co. v. Divide County School District No. 1, 193 N.W.2d 723 (N.D.1972). Or the City could give the cooperative a franchise to continue to serve the customers it is serving.

We affirm the judgment of the district court holding that the determination of the Commission was arbitrary and capricious. The utility did not sustain its burden of proof by substantial evidence that the public convenience and necessity reasonably required that it be allowed to extend its lines to serve the applicant.

█ Without going into definitions of the terms, we would note, as the trial judge did, that the words "arbitrary" and "capricious," when used in a legal sense as we have used them, are to be distinguished from the same words used in a popular sense, where they have an opprobrious connotation. We use them in the legal sense here to indicate simply that the findings of the Commission are without rational basis or that the evidence to support the findings is nonexistent or without probative value in either direction.

Affirmed.

ERICKSTAD, C. J., and JOHNSON, PAULSON and KNUDSON, JJ., concur.

## ADDENDUM

The following remarks are not part of the majority opinion of the court, but are comments of the author of the opinion.

Although I believe that Montana-Dakota Utilities Co. v. Johanneson, 153 N.W.2d 414 (N.D.1967), might be decided differently today, in the light of Application of Montana-Dakota Utilities Co., 219 N.W.2d 174 (N.D. 1974), and Snyder's Drug Stores, Inc. v. North Dakota State Board of Pharmacy, 219 N.W.2d 140 (N.D.1974), I accept its holdings for the purposes of this case.

Nevertheless, I believe we should re-examine the guidelines which this court created in Application of Otter Tail Power Co., 169 N.W.2d 415 (N.D.1969), to fill the gap caused by eliminating the guidelines contained in Section 3 of the Territorial Integrity Act, declared unconstitutional in Montana-Dakota Utilities Co. v. Johanneson, *supra*. In making such a re-examination, we have every right to examine the unconstitutional section for the purpose of determining the legislative intent.[1]

I believe that Section 3, so examined for legislative intent, shows a clear legislative intent that all areas outside cities where private utilities are franchised are to be served by rural electric cooperatives. The only possible exception would involve instances where the cooperative is unable to serve. Such an interpretation would not be inconsistent with the unconstitutionality of Section 3, and it is consistent with legislative intent. I would overrule that portion of Application of Otter Tail Power Co., *supra*, which holds that "a fair reading" of the law does not justify the conclusion that "cooperatives now are the preferred suppliers of electrical energy in all rural areas of the State, . . ." I believe that holding ignores the clear intent of the Legislature.

The present state of the law permits the utility to do as it has done in this case, where it has infiltrated cooperative territory and planted an outpost there, and then litigated the matter in the Public Service

1.  State ex rel. Maloney v. Sierra, 82 N.Mex. 125, 477 P.2d 301 (1970); Board of Commissioners v. State ex rel. Baker, 184 Ind. 418, 111 N.E. 417 (1916); Sales v. Barber Asphalt Paving Co., 166 Mo. 671, 66 S.W. 979 (1902); Sands' Sutherland Statutory Construction, Sec. 51.04.

Commission and the courts. Such a procedure, if the utility were successful here, as it was in the Public Service Commission, could result in a checkerboarding of the cooperative's territory, with wasteful duplication of lines and loss of economic viability of both utility and cooperative. The Territorial Integrity Act was enacted to avoid duplication, not to encourage it.

I believe we should follow the clear intent of the Territorial Integrity Act and construe it to give the cooperatives the favored position intended by the Legislature, and thereby end the continuing invasions of their territory by the utilities.