2016 ND 73

## CAPITAL ELECTRIC COOPERATIVE, INC., Appellant

v.

## NORTH DAKOTA PUBLIC SERVICE COMMISSION and Montana–Dakota Utilities Co., a Division of MDU Resources Group, Inc., Appellees.

No. 20150227.

Supreme Court of North Dakota.

March 28, 2016.

Matthew H. Olson, Minot, N.D., for appellant.

John M. Schuh, Special Assistant Attorney General, North Dakota Public Service Commission, Bismarck, N.D., for appellee North Dakota Public Service Commission.

Paul R. Sanderson (argued), Bismarck, N.D. and Daniel S. Kuntz (on brief), MDU Resources Group, Inc., Bismarck, N.D., for appellee Montana–Dakota Utilities Co.

KAPSNER, Justice.

[¶ 1] Capital Electric Cooperative, Inc. ("Capital"), appeals from a judgment affirming a Public Service Commission order granting Montana–Dakota Utilities Company ("MDU") a certificate of public convenience and necessity to extend its electric service in Burleigh County. Because the Commission's order is in accordance with the law, its findings of fact are supported by a preponderance of the evidence and sufficiently address the evidence presented, and those findings support the conclusions of law, we affirm the judgment.

I

[¶ 2] Menard, Inc., is developing a manufacturing and distribution center near McKenzie, an unincorporated community located in Burleigh County. Capital, a rural electric cooperative, and MDU, an investor owned electric utility, are the only electric suppliers operating in the general area of the Menard site. Since 1928 MDU, through its predecessors in interest, has held a franchise and a certificate of public convenience and necessity issued by the Commission, then called the Board of Railroad Commissioners, to serve the McKenzie community. The certificate of public convenience and necessity allows MDU service to the eastern boundaries of McKenzie, which is immediately northeast of and adjacent to the Menard site. Capital serves rural customers adjacent to the site. MDU serves 28 customers within a one-mile radius of the Menard site and 29 customers within a two-mile radius. Capital serves four customers within a one-mile radius of the Menard site and 11 customers within a two-mile radius.

[¶ 3] In October 2013, Menard requested estimated rates from Capital and MDU based on the anticipated load at its site of approximately 1.2 MW and an estimated annual consumption of 7 million kWh. Both MDU and Capital would need to construct extensions to provide three-phase electric supply lines to serve the Menard site. MDU estimated the total annual estimated cost to Menard would be $513,669.84 while Capital estimated the cost would be $575,883.84. Menard requested service from MDU based on present and future cost savings, reliability of service, and the Commission's regulatory oversight over rates and services.

[¶ 4] In November 2013, MDU applied to the Commission to extend electric service to the Menard site. Capital filed a protest and requested a hearing. Following a public hearing, the Commission, in a two-to-one decision, decided to grant MDU a certificate of public convenience and necessity and allow the company to provide electric service to the Menard site. In a nine-page decision consisting of 34 findings of fact, the Commission explained:

34. The Commission finds that public convenience and necessity reasonably requires approval of Montana–Dakota's application because:

- The customer prefers electric service from Montana–Dakota as it results in more than $60,000 in annual cost savings and better meets the customer's needs;

- Montana–Dakota has served customers in the area since 1928 and has more customers within a one-mile and two-mile radius of the location;

- Montana–Dakota's substation is located closer to the Menard Site providing less voltage drop and less line length on which a fault could occur;
- The proposed extension of Montana–Dakota's three-phase system to serve the site is shorter than the proposed extension of Capital Electric's three-phase system.
- Montana–Dakota will serve the Menard Site more economically when considering both the cost to extend service and the annual costs to the customer as reflected in rates for service;
- Montana–Dakota's extension of service would best serve the community of McKenzie and realize significant cost savings to Menard, Inc., therefore best serving orderly and economic development of the area.

The district court affirmed the Commission's order.

## II

[¶ 5] Capital argues the Commission erred in granting MDU a certificate of public convenience and necessity to provide electric service to the Menard site.

■ [¶ 6] In *North Cent. Elec. Coop., Inc. v. N.D. Pub. Serv. Comm'n*, 2013 ND 158, ¶¶ 6–7, 837 N.W.2d 138, we explained:

An appeal from a Commission decision is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Capital Elec. Coop., Inc. v. City of Bismarck*, 2007 ND 128, ¶ 30, 736 N.W.2d 788. As relevant to this appeal, a district court must affirm a Commission order under N.D.C.C. § 28–32–46, unless:

1. The order is not in accordance with the law.

. . . .

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

In an appeal to this Court from a district court's decision on an appeal from a Commission decision, we review the Commission's order in the same manner as the district court. *See* N.D.C.C. § 28–32–49. The Commission's decision on questions of law is fully reviewable. *Capital Elec. Coop.*, 2007 ND 128, ¶ 31, 736 N.W.2d 788. In reviewing the Commission's findings of fact, however, we do not substitute our judgment for that of the Commission or make independent findings. *Id. See Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979). Rather, in reviewing the Commission's findings of fact, " '[w]e determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.' " *Capital Elec. Coop.*, at ¶ 31 (quoting *Power Fuels*, at 220).

"Agency expertise is entitled to appreciable deference if the subject matter is highly technical." *Cass Cty. Elec. Coop., Inc. v. N. States Power Co.*, 518 N.W.2d 216, 220 (N.D.1994).

■ [¶ 7] Under the Territorial Integrity Act, an electric public utility, unlike a rural electric cooperative, must secure a certificate of public convenience and necessity before extending service to a new customer outside the corporate limits of a municipality. *See* N.D.C.C. §§ 49–03–01 and 49–03–01.1; *Capital Elec. Coop., Inc.*

*v. Pub. Serv. Comm'n*, 534 N.W.2d 587, 590 (N.D.1995). The criteria for the Commission to consider in deciding whether a certificate of public convenience and necessity should be issued are:

> [C]ustomer preference for service by the electric public utility [is] not determinative of public convenience and necessity, but should be considered along with:
>> "the location of the lines of the suppliers; the reliability of the service which will be rendered by them; which of the proposed suppliers will be able to serve the area more economically and still earn an adequate return on its investment; and which supplier is best qualified to furnish electric service to the site designated in the application and which also can best develop electric service in the area in which such site is located without wasteful duplication of investment or service."

*Capital Elec. Coop., Inc.*, at 591 (quoting *Application of Otter Tail Power Co.*, 169 N.W.2d 415, 418 (N.D.1969)).

### A'

[¶ 8] Capital argues the Commission erred in considering Menard's preference for service from MDU because "customer preference is not a criterion of public convenience and necessity."

[¶ 9] While not controlling, customer preference has long been recognized as a proper consideration for the Commission in deciding whether a certificate of public convenience and necessity should be issued. *See, e.g., Cass Cty. Elec. Coop., Inc. v. Wold Props., Inc.*, 249 N.W.2d 514, 521 (N.D.1976); *Tri–County Elec. Coop., Inc. v. Elkin*, 224 N.W.2d 785, 792 (N.D. 1974); *Montana–Dakota Utils. Co. v. Hagen*, 219 N.W.2d 174, 181 (N.D.1974); *Cass Cty. Elec. Coop., Inc. v. Otter Tail Power Co.*, 169 N.W.2d 415, 418 (N.D.1969).

While Capital correctly points out that "customer preference is a minor consideration" in rural areas and "cannot prevail where economic factors ... provide other criteria for choice," *Tri–County Elec. Coop., Inc.*, at 792, on the basis of the record before us we cannot say the Commission placed undue significance on customer preference in this case. Indeed, the Commission found most of the factors it reviewed, including economic factors, favored MDU.

[¶ 10] Menard preferred electric service from MDU, and the Commission did not err in weighing that preference in its public convenience and necessity analysis.

### B

[¶ 11] Capital argues the Commission's findings on the numbers of customers served in the area by MDU and Capital are not supported by the preponderance of the evidence and do not sufficiently address the evidence presented. Capital does not dispute that MDU has 28 customers within a one-mile radius and 29 customers within a two-mile radius of the Menard site, or that Capital has four customers within a one-mile radius and 11 customers within a two-mile radius. Capital contends the preponderance of the evidence nevertheless shows that it has more customers in the immediate vicinity of the Menard site, apparently because it contends the Commission's finding that McKenzie "is immediately northeast and adjacent to the site" is incorrect.

[¶ 12] First, the Commission's finding that McKenzie is immediately northeast and adjacent to the Menard site is supported by the evidence. Although the platted land immediately adjacent to the site is currently undeveloped, MDU's franchise and certificate of public convenience and necessity allows it to serve that undeveloped property. Second, there is evi-

dence the number of customers served by electric suppliers in the larger vicinity should be considered for assessing capacity requirements in determining the orderly development of electrical service. The evidence showed MDU operates three-phase facilities closer to the Menard site than Capital and serves more customers in the area. Even if Capital serves customers closer to the Menard site, this does not preclude the Commission from considering the number of customers served in the larger area for the purpose of examining duplication of services.

### C

[¶ 13]   Capital argues the Commission's findings on the locations of MDU and Capital's lines and proposed extensions are not supported by a preponderance of the evidence and do not sufficiently address the evidence presented.

[¶ 14]   The Commission found:

8.   Montana–Dakota owns and operates a 46 kV transmission line that originates at Bismarck and extends in an easterly direction along the north side of I–94 providing transmission service for a number of communities served by Montana–Dakota, including the community of McKenzie. The transmission line is a two-way or looped supply source for Montana–Dakota's substation located north of McKenzie, which in turn supplies Montana–Dakota's distribution system serving its customers in McKenzie and the surrounding area. The transmission line west of the McKenzie substation was rebuilt in 1972, and the transmission line east of the McKenzie substation was rebuilt in 1975. The prior transmission line serving the community of McKenzie and the surrounding area was constructed in 1945. Montana–Dakota's distribution line for the community of McKenzie is a Delta three-phase primary overhead line extending south from the McKenzie substation. The current distribution lines used to serve the community of McKenzie were primarily constructed in 1960, 1965, 1969, 1971 and 1979. The distribution system continues outside of McKenzie as a single-phase line to serve customers south and west of McKenzie.

9.   Central Power Cooperative operates a transmission line located on the south side of I–94 that connects substations at Menoken and Sterling. Capital Electric proposes to serve the Menard Site from the Menoken Substation which is located approximately 8 miles west of McKenzie. Capital Electric has an underground three-phase distribution line which runs from the Menoken Substation along the south side of Interstate 94, and an underground single-phase distribution line which runs south from Interstate 94 for approximately one mile to the area of the Menard Site at which point it goes above ground to serve customers in the area. The underground three-phase line along Interstate 94 was built in 1976. The underground single-phase line extending south from Interstate 94 was rebuilt in 2010. The previous distribution line was an above-ground distribution line built in 1948.

10.   Both electric suppliers will need to construct extensions to existing three-phase electric supply lines to serve the Menard Site. Montana–Dakota would serve the Menard Site by adding a neutral wire to convert approximately 5,700 feet of existing three-phase overhead line currently providing electric service to McKenzie from a Delta to Wye configuration, converting approximately 1,200 feet of single-phase line to three-phase Wye and then extending that converted line underground for a distance of approximately 1,800 feet to the Menard Site. Capital Electric would serve

the Menard Site by converting about a mile of single-phase line to three-phase line between its existing three-phase line and the Menard Site.

[¶ 15] Capital contends that because its proposed one mile or 5,280 feet of three-phase construction is shorter than MDU's total proposed three-phase construction of 8,700 feet, the Commission's finding that the "proposed extension of [MDU's] three-phase system to serve the site is shorter than the proposed extension of [Capital's] three-phase system" is not supported by the evidence. However, it is undisputed that MDU's current three-phase system is closer to the Menard site. MDU would be required to update its existing three-phase line and extend it 1,800 feet, while Capital would be required to convert approximately one mile of single-phase line to service the site. The Commission was not determining that MDU's total length of proposed additions and upgrades was "shorter," but that an extension of MDU's currently existing three-phase system would be shorter than an extension of Capital's three-phase system. This finding is supported by a preponderance of the evidence in the record.

### D

[¶ 16] Capital argues the Commission's findings on the costs to extend service to the Menard site are not supported by a preponderance of the evidence and do not sufficiently address the evidence presented.

[¶ 17] In concluding MDU "will be able to serve the Menard Site location more economically and still earn an adequate return on its investment," the Commission found:

18. Montana–Dakota would serve the Menard Site by extending its existing three-phase system at McKenzie and by converting that system and the McKenzie Substation from a Delta three-phase to a Wye three-phase system. The conversion of the McKenzie Substation would require replacement of existing transformers with a larger three-phase Wye transformer, voltage regulators, reclosure, and associated wiring. The transformer would be a used transformer from existing inventory. Conversion of the electric system within the community of McKenzie from Delta three-phase service to Wye three-phase service requires addition of a neutral wire to the existing three-phase distribution line. This conversion will upgrade and increase the capacity of Montana–Dakota's existing three-phase system sufficiently to serve the Menard Site and any additional load requests likely to result in the community of McKenzie. Montana–Dakota's estimated total cost to extend secondary service to the Menard Site is $192,671, which includes the extension from the existing system to the Menard Site ($32,619), upgrades to the McKenzie substation ($61,451), the conversion of the McKenzie distribution line to a Wye three-phase system ($32,562), and the installation of conductors and equipment within the Menard Site ($66,-039). Montana–Dakota's annual revenue requirement associated with the total incremental investment associated with the proposed extension is $27,872.

19. Capital Electric would extend service to the Menard Site by installing one mile of two new phases to its current single-phase service between its existing three-phase system and the Menard Site. Capital Electric's estimated cost to extend secondary service to the Menard Site is approximately $110,223, which includes the conversion of its single-phase line to a three-phase line ($44,527) and the installation of conductors and equipment within the Menard Site ($65,696).

Capital Electric did not provide annual revenue requirements for recovering the cost of its proposed extension.

20. The estimated electric consumption for the Menard Site is approximately 7 million kWh per year. Consideration of the cost to serve the location includes consideration of not only the revenue requirement associated with the incremental investment to extend service, but also the other costs of electric distribution, transmission and generation as reflected in the service providers['] rates for service. The annual cost to the customer to provide secondary electric service to the Menard Site by Montana–Dakota for the estimated consumption under its current rates is $513,669.84. The annual cost to the customer to provide secondary electric service to the Menard Site by Capital Electric for the estimated consumption under its current rates is $575,883.84.

21. The annual cost to the customer for Capital Electric to provide firm secondary electric service to the Menard Site is approximately $62,214, or 11 percent, more than the annual cost to the customer under Montana–Dakota's rate schedule for firm secondary electric service to the Menard Site. After adjusting Montana–Dakota's estimated annual revenue from providing service to the Menard Site by: (1) $27,872 for the annual return requirement on its incremental investment to serve the location; and (2) $189,140 for the annual cost of fuel and purchased power to serve the location, there will be net contribution to common system costs of $296,658, which will provide a benefit to other customers. Capital Electric did not provide information or an analysis of the amount of revenue Capital Electric would require to derive an adequate return on its incremental investment to serve the Menard Site.

[¶ 18] Capital contends the Commission erred because its cost to extend secondary service is $110,223, about $82,000 less than MDU's cost of $192,671, which is exacerbated by the Commission's failure to assign any cost to the used transformer that would be placed at MDU's McKenzie substation. However, Capital did not provide the Commission with a complete financial analysis of its costs to provide service to the Menard site. For example, Capital provided no evidence of the costs necessary to upgrade its Sterling substation to improve reliability of service. Moreover, unlike MDU, Capital produced no evidence of its annual revenue requirements for recovering the cost of its proposed extension or of the amount of revenue that would be required for it to receive an adequate return on its investment to serve the Menard site. Capital made it virtually impossible for the Commission to determine whether Capital could serve the Menard site more economically and earn an adequate return on its investment. Capital cannot complain about the Commission's analysis of comparative costs when its own evidence was deficient.

[¶ 19] We conclude a reasoning mind could have found as the Commission did on the costs to extend service to the Menard site on the evidence that was presented.

E

[¶ 20] Capital argues the Commission erred in placing any reliance on MDU's franchise granted by the McKenzie Township. Capital contends a township has no power to grant a franchise.

[¶ 21] It is unnecessary for us to address this issue. There is no dispute that MDU's predecessor in interest in 1928 received a certificate of public convenience and necessity to serve the McKenzie community to a point adjacent to the Menard

site. No evidence was presented indicating that this certificate has ever been revoked. *See* N.D.C.C. § 49–05–09 (procedure for rescission or amendment of Commission orders). Because MDU's certificate of public convenience and necessity has not been revoked, MDU has the right to provide electric service to the McKenzie community, regardless of the validity of the franchise granted by the township. *See Cass Cty. Elec. Coop., Inc.,* 249 N.W.2d at 522.

### F

[¶ 22] Capital argues the Commission erred as a matter of law in finding "[MDU] will serve the Menard Site more economically when considering . . . the annual costs to the customer" and "[MDU's] extension of service would best serve the community of McKenzie and realize significant cost savings to Menard, Inc., therefore best serving orderly and economic development of the area."

[¶ 23] Capital first argues that cost savings to the customer is a variation of the "consumer preference" criterion which is not a determinative factor. But we have already concluded the Commission did not place undue significance on customer preference. Second, Capital contends that the Commission erred in "equating a single customer's economic advantage with orderly and economic development of electric service," and in effectively creating a new criterion incompatible with those factors set forth in *Otter Tail Power Co.,* 169 N.W.2d at 418. But those factors include "which of the proposed suppliers will be able to serve the *area* more economically" and "which also can best develop electric service in the *area* in which such site is located." *Id.* (emphasis added). These factors are broad enough to include consideration of possible economic development in the area. Here, MDU presented evidence how its distribution and transmission system would benefit from the added load, and how the public would also benefit from improved electric service to the adjacent McKenzie community. Capital did not present evidence of benefits its service would provide to the general public.

[¶ 24] Third, Capital argues the Commission's decision will result in wasteful duplication of investment or service. In addressing this question, the Commission found:

27. Both electric suppliers will need to construct extensions or upgrades to existing facilities to serve the Menard Site.
28. One factor to be considered in determining wasteful duplication of investment is whether, in order to serve the customer in question, one supplier's extension of facilities must cross the facilities of another supplier. In this case, both suppliers currently cross or would cross each other's lines in this area. Montana–Dakota's proposed line extension would cross Capital Electric's single-phase line located west of the Menard Site, which is not capable of serving and is not proposed by Capital Electric for use to serve the Menard Site. Capital Electric's three-phase line that feeds this single-phase line already crosses Montana–Dakota's three-phase line serving McKenzie.
29. Montana–Dakota's proposed addition of a larger transformer and conversion to a Wye system will improve Montana–Dakota's electric service within the community of McKenzie and help meet potential growth resulting from approximately 240 new jobs.
30. The Commission finds that approval of the application would not result in wasteful duplication of investment or service.

[¶ 25] "[I]t may not always be possible to prevent some of the actual duplication

of distribution facilities which may occur in practice when cooperatives extend their existing electrical systems." *N. States Power Co. v. Pub. Serv. Comm'n,* 452 N.W.2d 340, 344 (N.D.1990). The Commission recognized that there would be some duplication but that it would not be "wasteful." The question of which electric supplier's facilities are actually duplicative or wasteful is one of fact for the Commission's determination. *Id.* at 345. A reasoning mind could have reasonably determined that no wasteful duplication of investment or service would result from granting the certificate of public convenience and necessity to MDU.

### III

[¶ 26]   We conclude the Commission's decision is in accordance with the law, its findings of fact are supported by a preponderance of the evidence and sufficiently address the evidence presented, and those findings support the conclusions of law.

[¶ 27]   The judgment is affirmed.

[¶ 28]   DALE V. SANDSTROM, Acting C.J., MARY MUEHLEN MARING, S.J., LISA FAIR McEVERS and DANIEL J. CROTHERS, JJ., concur.

[¶ 29]   The Honorable MARY MUEHLEN MARING, S.J., sitting in place of VANDE WALLE, C.J., disqualified.