CASS COUNTY ELECTRIC COOPERA-
TIVE, Inc., of Kindred, North Dakota,
Complainant and Appellant,

v.

OTTER TAIL POWER COMPANY of Fergus
Falls, Minnesota, Respondent,

and

Anson J. Anderson, Ernest D. Nelson and
Martin Vaaler, as members of the Public
Service Commission of the State of North
Dakota, Appellants.

No. 7686.

Supreme Court of North Dakota.

Oct. 1, 1958.

Rehearing Denied Oct. 16, 1958.

**48**

Quentin N. Burdick, Fargo, for appellant, Cass County Electric Coop. Inc., of Kindred.

Charles L. Murphy, Special Asst. Atty. Gen., for Public Service Comm.

L. T. Sproul, Valley City, Field, Arvesen & Donoho, Fergus Falls, Minn., for respondent.

BURKE, Judge.

In this proceeding the Cass County Cooperative Inc. petitioned the Public Service Commission for an order directing the Otter Tail Power Company to "cease and desist" from selling electric power to the Standard Oil Company of Indiana at its microwave station located on the Southeast Quarter of the Southeast Quarter of Section 13, Township, 140 N. Range 55 W., also known as Tower Township. After a hearing the Public Service Commission issued the requested order. The Otter Tail Power Company appealed from the order of the Commission to the District Court of Barnes County and that court, after hearing the appeal, reversed the order of the Commission. Cass County Electric Cooperative and the Public Service Commission have appealed from the decision of the district court.

The Otter Tail Power Company, a public utility, has been supplying electric power service in the vicinity of Tower Township and Buffalo Township, which lies immediately east of Tower Township, for a great many years. In 1927, it secured authorization from the Public Service Commission (then known as Board of Railroad Commissioners) to construct a transmission line from 4 miles south of the Village of Buffalo, which lies in the Southwest Quarter of Section 17 and the Northwest Quarter of Section 30 in Buffalo Township, to the Village of Ayr, which lies in the Township immediately north of Buffalo Township. The line, as constructed, was set upon the township line separating Tower Township and Buffalo Township, from the southern boundary of the townships to a point two miles north of the Village of Buffalo, thence it proceeded east and north to the Village of Ayr. In 1929, Otter Tail Power Company, by resolution of the Township Board, secured authority to construct transmission, distributing and branch or farm lines in Tower Township.

It appears that prior to 1942, Otter Tail was furnishing electric service to the Village of Buffalo, and rural service outside of the Village to one customer in Section 4, one in Section 17, three in Section 20, one in Section 28 and one in Section 31 of Buffalo Township. It was also giving service outside of the Village to four customers in Section 24 of Tower Township. In 1942 and 1943, the Cass County Electric Cooperative built its distribution lines in Tower and Buffalo Townships. These lines cross the transmission and distribution lines of the Otter Tail and one of the distribution lines parallels a distribution line of the Otter Tail from the north line to the south line of Buffalo Township at a distance of only one mile to the west. One mile to the east another distribution line of the Cooperative parallels the line of the Otter Tail. Thus the Cass County Electric Cooperative, by virtue of the special consideration given by statute to cooperatives, was permitted to enter the territory served by Otter Tail without the necessity of securing a certificate of public convenience and necessity.

In 1954, the Standard Oil Co. constructed a microwave station on the Southeast corner of Section 13, of Tower Township. This corner is just across the road from the crossing of the Cass County Cooperative's east and west distribution line and the Otter Tail's north and south transmis-

sion line. During the course of construction, the representatives of Standard Oil noted the two lines, they also saw that the north and south line was a three-phase line while the east and west line was a single-phase. They made inquiries as to the owner of the three-phase line and, upon discovering that it belonged to Otter Tail, made application to Otter Tail for service. The reason Otter Tail service was chosen was because, as testified to by Standard Oil's District Superintendent of pipe lines, "The closer we can get to a three-phase line, the better service we are going to get and dependable service is very necessary in operating our microwave station." Otter Tail agreed to furnish the requested service. To do so, it constructed a single-phase intermediate voltage line from its substation at Buffalo to the point where the service was to be furnished. The line was nine-tenths of a mile long and it was constructed as an underbuild upon the poles of the transmission line.

The complaint of the Cass County Electric Cooperative is that the installation of this service constituted an illegal extension of service under the provisions of Section 49–0301, 1953 Supp. NDRC. This section is as follows:

"No public utility henceforth shall begin in the construction or operation of a public utility plant or system or extension thereof, without first obtaining from the commission a certificate that public convenience and necessity require or will require such construction and operation. This section shall not be construed to require any such public utility to secure such certificate for:

"1. An extension within any municipality or district within which it has lawfully commenced operations;

"2. An extension within or to territory already served by it necessary in the ordinary course of its business; or

"3. An extension into territory contiguous to that already occupied by it and not receiving similar service from another utility, or electric cooperative corporation or if no certificate of public convenience and necessity has been issued to any other public utility.

"If any public utility in constructing or extending its line, plant, or system, unreasonably interferes with or is about to interfere unreasonably with the service or system or any other public utility, or any electric cooperative corporation, the commission on complaint of the public utility or the electric cooperative corporation, claiming to be injuriously affected, after notice and hearing as provided in this title, may make such order enforcing this section with respect to such public utility and prescribe such terms and conditions as are just and reasonable."

Otter Tail contends that the service furnished is permissible without the necessity of obtaining a certificate of public convenience and necessity under exceptions 2 and 3 of the above statute. It urges that the service is an extension within or to territory already served by it and necessary in the ordinary course of its business or that the extension is into territory contiguous to territory already served by it and not receiving similar service from another utility or electric cooperative corporation.

The first question therefore is; what is comprised within the territory already served by a utility? In considering this question it is necessary to keep in mind that the fact that the point in question may be in territory served by another supplier of electric power, though it may have some bearing upon the question, is not necessarily determinative thereof. The overlapping and parallel lines of the contestants in this controversy demonstrate the validity of this premise. In at least two instances they both have customers in the same section

and there are many instances where they are serving customers in adjoining sections. There can be no question but that a large part of the rural area in the neighborhood of the Village of Buffalo is in territory already served by both the utility and the cooperative. The fact that a cooperative is permitted to enter territory served by a utility does not oust the utility from that territory. Illustrative of this principle is the decision in Re Nafe, 4 P.U.R.3rd 369. Nafe, who was receiving electric service from a cooperative, applied to the Public Service Commission of Ohio for utility service on the ground that the cooperative service was unsatisfactory. Both the cooperative and the utility objected, but the Public Service Commission found that the petitioner's residence was in territory served by the utility and ordered the utility to extend its service to him. It is obvious that the "territory already served" cannot be limited to the particular areas occupied by present customers, for, if this were true, there could be no extensions whatever to any new customers under exception 2 of the statute. We think it also clear that the "territory already served" is not that comprised within lines joining the present customers of a utility for the statute permits extensions not only "within" but "to" the territory already served. In some states the territory served is defined by statute. The permitted extensions from existing distribution lines vary from 1,000 feet in New Hampshire (In re Conn. Valley Electric Co. Inc. 87 P. U. R., N.S., 296) to 10 miles in Wyoming (In re Washakie Rural Electric Co., 92 P. U. R., N.S., 505).

In this State, we have no explicit statutory guide to follow, but since the law clearly implies that the territory served includes some areas in addition to that occupied by present customers, we hold that the territory served in rural areas includes that within a reasonable distance of existing distribution lines or substations. What is reasonable will, of course, depend upon the circumstances of each case. In the instant case the point to be served is located on the Southeast corner of Section 13 of Tower Township. Immediately south of Section 13, in Section 24, Otter Tail has four customers. Less than two miles to the east, it has four customers in Sections 17 and 20 of Buffalo Township. To the north and east it has other customers. An examination of the maps which are exhibits in the case discloses that, in many instances, extensions of more than a mile from a distribution line have been necessary to reach a single customer. This is true of the lines of both the Otter Tail and the Cooperative. The extension made by the Otter Tail in this case was .9 of a mile from its substation in the Village of Buffalo. For a quarter of a mile the new line was within the limits of the Village. It extended but .65 of a mile beyond the limits of the Village and since Otter Tail was already serving rural customers within the general area of the microwave station we are agreed that the extension to the microwave station was an extension within or to territory already served. It is of course true that it is also within territory served by the cooperative but since it is in the territory served by both, the customer could choose which service he wanted.

The judgment of the district court is therefore affirmed.

GRIMSON, C. J., and MORRIS, SATHRE and JOHNSON, JJ., concur.