**Application of MONTANA–DAKOTA UTIL-ITIES CO., for an order and certificate to extend electric service to Lawrence L. Naaden at Braddock, North Dakota.**

**Lawrence L. NAADEN, Appellant,**

**and**

**Montana-Dakota Utilities Co., a corporation, Applicant,**

**v.**

**Bruce HAGEN et al., Appellees.**

**Civ. No. 8958.**

Supreme Court of North Dakota.

June 4, 1974.

Rausch & Chapman, Bismarck, for appellant.

Pearce, Anderson, Pearce, Thames & Pearce, Bismarck, for applicant.

Ray H. Walton, Asst. Atty. Gen., North Dakota Public Service Commission, Bismarck, Robert Chesrown, Linton, and Pringle & Herigstad, Minot, for appellees.

TEIGEN, Judge.

This is an appeal by Lawrence L. Naaden (hereinafter Naaden), an electric serv-

ice customer of Montana-Dakota Utilities Company (hereinafter MDU), a public utility electric supplier, from a judgment of the district court affirming a decision of the Public Service Commission (hereinafter Commission), and dismissing the appeal from the Commission's order to the district court. The judgment also directs that MDU shall, within sixty days of service of the notice of entry of judgment, disconnect its temporary electric service to the hog barn belonging to Naaden and remove that portion of its electric distribution facilities constructed from the city of Braddock to the Naaden hog barn.

It appears that at the request of Naaden, MDU, on July 26, 1968, filed an application with the Commission for permission to extend its electric service line from the city of Braddock for a distance of about 1,116 feet in order to provide electric service to a modern hog barn owned and operated by Naaden, for heating, air conditioning and other purposes, and for a certificate of public convenience and necessity for such purpose. The application was accompanied by Naaden's written request, showing his customer preference for service from MDU. The application of MDU and the written request for service by Naaden also stated that an emergency existed in that Naaden needed and demanded immediate electric service at his hog barn, and requested that the Commission issue a conditional (temporary) order and certificate authorizing the extension of immediate service, subject to the usual conditions.

On July 31, 1968, the Commission issued its notice of opportunity for hearing and opportunity to file objections or requests for hearing on the application before the Commission. On August 26, 1968, KEM Electric Cooperative, Inc. (hereinafter KEM) filed an objection to the application and requested a hearing. On September 17, 1968, the Commission issued a conditional order and certificate authorizing MDU, subject to certain conditions contained therein, to extend service to the location. Notice of hearing was issued by

the Commission on September 25, 1968, but was subsequently indefinitely postponed at the request of KEM. Subsequently, the Commission issued a new notice of hearing on September 2, 1969. The matter finally came on for hearing before the Commission on September 23, 1969, following which it issued its findings of fact, conclusions of law and order on June 4, 1970.

At the time of the hearing MDU was, and for sometime had been, supplying electrical energy to Naaden's hog barn under the conditional (temporary) order and certificate of September 17, 1968. The Commission found that KEM was, and had been, the dominant supplier of electrical energy in the general rural area around Braddock, and the extension by KEM to serve Naaden's hog barn would be consistent with the orderly development of electric power in that area. It also found that KEM had been actively serving the Naaden farmstead, located in the same quarter section of land, since January 1950 and had a distribution line in place which was located only 2,330 feet from the Naaden hog barn; that to allow the extension by MDU would amount to a duplication of service capabilities in an area already fully served by KEM. It therefore concluded that public convenience and necessity did not require that the load in question be served by MDU but would be subserved by KEM providing electric power to Naaden's hog barn. On the basis of its findings the Commission denied MDU's application for a certificate of public convenience and necessity. The Commission also continued the conditional (temporary) order in force "until KEM Electric Cooperative has extended its facilities to the hog barn and has indicated its readiness to hook up and serve the load." Thus the order of June 4, 1970, reflects two separate and distinct decisions made by the Commission.

Thereafter, on or about February 18, 1972, the Commission received a letter from counsel for KEM indicating that Naaden had refused to allow KEM to extend its facilities so as to replace those of

MDU, whereupon the Commission, on March 14, 1972, issued an order directed to MDU, Naaden and KEM, to show cause, if any there be, "why the Commission should not proceed to amend its Order of June 4, 1970, to require the cessation of the service of Montana-Dakota Utilities Co. to the Naaden farmstead by May 1, 1972."

The Order to Show Cause was made returnable on April 6, 1972, and, on that date, a hearing was held before the Commission. Appearing thereat were counsel for MDU, counsel for KEM, and Naaden pro se. At that hearing Naaden confirmed that he had refused to allow KEM to construct facilities on his land in order to extend service to his hog barn, and indicated to the Commission that he would continue to refuse to accept service from KEM. It was also established that KEM stood ready, willing and able to provide Naaden with electric service; that Naaden had had ample time to consider other sources of power but had neglected and refused to do so. Whereupon, on April 11, 1972, the Commission issued the order in issue on this appeal, which provides:

"ORDER

"NOW, THEREFORE, IT IS HEREBY ORDERED that Montana-Dakota Utilities Co. shall disconnect its service to the hog barn heretofore served pursuant to the Conditional Order and Certificate and the Commission's Order of June 4, 1970, on the Naaden farmstead, and shall remove that portion of its electric distribution facilities constructed from the city limits of Braddock to the Naaden farmstead, no later than the 1st day of May, 1972, and

"IT IS FURTHER ORDERED that any portion of the Commission's Order made and entered herein on the 4th day of June, 1970, which conflicts herewith or is inconsistent herewith, is, to that extent, revoked and set aside."

MDU and Naaden joined and appealed to the district court of Burleigh County from the order of April 11, 1972. The district court, on application of MDU and Naaden, stayed the order of the Commission dated April 11, 1972, until final determination of the matter. KEM moved to dismiss the appeal on the ground that the Commission's order of April 11, 1972, is not an appealable order as it does not affect the substantial rights of the parties. Having heard the appeal, the district court filed its memorandum opinion on April 2, 1973, and issued an order whereby it concluded as follows:

"1) that the appeal was not timely as to the matters determined and decided by the Public Service Commission's decision and order of June 4, 1970, and 2) that the decisions and orders of the Public Service Commission of June 4, 1970, and April 11, 1972, are in accordance with law, do not violate the constitutional rights of the Appellants, and the Findings of Fact made by the Public Service Commission are supported by the evidence, and the conclusions and decisions of the Public Service Commission are supported by its findings of fact;

"ACCORDINGLY, IT IS HEREBY ORDERED that Judgment be entered herein dismissing this appeal in all respects, and affirming the April 11, 1972, order of the Public Service Commission, and ordering that Montana-Dakota Utilities Co. shall, within sixty (60) days of service of the Notice of Entry of Judgment herein, disconnect its service to the hog barn on the Naaden farmstead and shall remove that portion of its electric distribution facilities constructed from the city limits of Braddock to the Naaden farmstead."

Judgment was entered thereon on April 10, 1973. Naaden secured counsel and appealed from the judgment to this court. MDU has not taken an appeal therefrom. On application of Naaden the district court

issued a stay of its judgment until final determination by this court.

Naaden, in his appeal to this court, sets up the following issues:

"1. Whether the Public Service Commission's Order of April 11, 1972, was an appealable order.

"2. Whether the Public Service Commission's Order of April 11, 1972, and the Judgment of the District Court affirming that order deprive the Appellant of due process of law and the equal protection of the laws.

"3. Whether the Appellant is entitled to be served by a regulated public utility."

We see no merit to the first issue. Counsel for Naaden misconstrued the trial court's judgment. The trial court did consider the Commission's order of April 11, 1972, as appealable but determined, in accordance with the explanation contained in its memorandum opinion, that "the only item on this appeal that this Court could consider is the question of the reasonableness of the time allowed MDU to vacate and remove its facilities from the Naaden location. The specifications of error do not raise this point and it will therefore not be considered." In this respect the trial court was correct. All of Naaden's arguments and specifications were directed at the Commission's order of June 4, 1970. No appeal was taken from that order within the thirty days allowed by law. Section 28–32–15, N.D.C.C.

The Commission is empowered, at any time, upon due notice to the public utility affected and after opportunity to be heard, to rescind, alter or amend any decision made by it, and where it makes such an order and serves it upon the public utility affected, it has the same effect as an original order or decision. Section 49–05–09, N.D.C.C. The Order to Show Cause and the hearing held thereon were limited to the single question of whether the Commission should require the cessation of service

by MDU to Naaden by May 1, 1972, and, following a hearing thereon, it so ordered. This has reference to the second part of the decision and order of June 4, 1970, allowing MDU to give temporary service, and not to its decision not to issue a certificate of public convenience and necessity.

The power of the Commission to amend its orders rests entirely upon statutory authority. Section 49–05–09, N.D.C.C., provides:

"The commission, at any time, upon due notice to the public utility affected and after opportunity to be heard as provided in the case of complaints, may rescind, alter, or amend any decision made by it. Any order rescinding, altering, or amending a prior order or decision, when served upon the public utility affected, shall have the same effect as an original order or decision."

This statute clearly gives the Commission power to amend its orders at any time, subject to the requirement that it give the affected utility notice of its intention to amend and an opportunity to be heard. We find, by its notice, that the Commission clearly limited the purpose of the hearing to the single question stated in the Order to Show Cause. The hearing was also limited to that single issue and, as a result, the Commission was not vested with authority to reconsider that part of its order of June 4, 1970, which denied MDU's application for a certificate of public convenience and necessity, nor did it do so.

■ For these reasons we agree with the trial court that its review on appeal from the Commission's order of April 11, 1972, was limited to the question of the reasonableness of the time allowed MDU to vacate and remove its facilities from the Naaden property. However, this issue was not raised in the appeal to the district court nor is it raised in the appeal to this court. It therefore will not be considered here, and the trial court was correct in ordering a dismissal of the appeal.

The trial court, rather than permitting the appeal to be dismissed exclusively on the foregoing basis, decided the issues raised by the specifications of error. The same issues are argued on this appeal (issues 2 and 3 set forth above).

■ The narrow issue argued is whether a rural consumer of electric power has a constitutional right to receive electric power from a regulated public utility when he so chooses. In other words, does customer preference govern the Commission in such a case.

Naaden recognizes that in Montana-Dakota Utilities Co. v. Johanneson, 153 N. W.2d 414 (N.D.1967), this court was faced with a similar challenge by a regulated public utility contending that the law violated the equal protection clauses by unduly discriminating against it in favor of a nonregulated utility. In that case we held that there was no unconstitutional discrimination between the regulated and nonregulated supplier of electrical energy under the classifications established by the statutes. However, Naaden argues that the contention was not made by a user of electrical power, in other words a customer, and contends that under the equal protection of the laws the customer, as a member of the public, is entitled to service from a regulated public utility if he so elects. On the other hand, Naaden does not contend that in the case of two regulated public utilities he should be allowed to choose from which supplier he will take service. Naaden argues that as a member of the public he is a member of that class of persons for whose benefit the statutes regulating public utilities were passed; that, therefore, the Commission, in ordering MDU to disconnect service to his hog barn, has administered the law in an unconstitutional way by excluding him from that class. He argues that the Commission has interpreted the Territorial Integrity ¡Law as creating two classes of members of the public, those who are entitled to service from a regulated public utility and those who are not. He argues that there is no justification for this classification; that it is not based on the achievement of a legitimate purpose of legislation, is arbitrary and violates the constitutional guaranties of equal protection of the laws. In making this argument it appears that Naaden is singling out that segment of the public defined in the Territorial Integrity Law as being rural, and states that the law has been applied in such a way as to create an unjust discrimination against him as compared to those others, also in rural areas, who have been allowed to receive regulated public utility service outside municipal limits, thus denying him both equal protection and due process of law.

He cites in support thereof Application of Theel Bros. Rapid Transit Co., 72 N.D. 280, 6 N.W.2d 560 (1942). That case involved an application by a trucker to the Public Service Commission for an extension of its certificate, already granted, to include new territory. The appeal centered largely on questions of fact and, although no constitutional question was raised, this court reviewed the powers of the Commission with respect to its supervision and regulation of common motor carriers of property, and then included the following quote from Howard Sports Daily, Inc. v. Weller, Chairman, Public Service Commission, 179 Md. 355, 18 A.2d 210, in its opinion:

> " 'If a law is so applied and administered as to make unjust discrimination between persons in similar circumstances material to their rights, such denial of equal justice violates "due process of law" and "equal protection of laws" clauses of the federal and state constitutions.' "

Application of Theel Bros. Rapid Transit Co., 6 N.W.2d 564.

Although in that case this court did not apply the above principle as it was not confronted with a constitutional question, we believe, nevertheless, that it is good law. However, it does not appear to be applicable here. As there is no proof in

this record, it does not appear to us that the Territorial Integrity Law was "so applied and administered as to make unjust discrimination between persons in similar circumstances material to their rights."

Chapter 49-03, N.D.C.C., requires that before a public utility may extend its electric transmission or distribution lines beyond or outside the corporate limits of any municipality it must first obtain an order from the Commission authorizing such extension and service and a certificate that public convenience and necessity require that permission be given to extend such lines to serve such customer. Thus, under the Act, extensions of electrical distribution lines and the rendering of electric service can be made by a public utility into a rural area to serve a rural customer provided it can establish to the satisfaction of the Commission that public convenience and necessity require that the Commission issue the certificate. The Act does not distinguish between rural customers because, if it can be established to the satisfaction of the Commission that public convenience and necessity require it, permission shall be given to extend the lines to serve any rural customer who qualifies.

Naaden and all rural potential users of electrical energy may be served by a regulated public utility provided public convenience and necessity so require. However, the proofs submitted and the results of the investigation by the Commission failed to establish the criteria necessary to make a finding that public convenience and necessity require that a certificate be issued in this case. Naaden does not challenge these findings. There is no showing of discrimination in the administration of the Territorial Integrity Law, as shown by this record.

■ Equal protection of the law requires that the rights of every person must be governed by the same rules of law under similar circumstances, and the constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. City of Bismarck v. Materi, 177 N.W.2d 530 (N.D.1970).

■ The Legislature, in enacting the Territorial Integrity Law, has established certain regulations and policies to govern the extension of electrical service in the state of North Dakota. If the service is operated by a public utility, its operation is regulated by the Commission. If it is operated by an electric cooperative and is under the control of the members, the Legislature has assumed that such members who control their own business will adequately protect their own interests, and no control by the Commission is deemed necessary. To accomplish this, the Territorial Integrity Law prohibits regulated public utilities from extending their electric lines or serving a rural customer not located within the corporate limits of a municipality unless public convenience and necessity require that permission be given to extend their lines and to give such service. In order that such permission may be given it must be established that public convenience and necessity require that permission be given to extend such lines and serve such customers. Section 49-03-01.1, N.D.C.C. Factors to be taken into consideration in determining whether an application for a certificate of public convenience and necessity should be granted are: location of the lines of the suppliers, the reliability of the service which will be rendered by them, which of the proposed suppliers will be able to serve the area more economically and still earn an adequate return on its investment, which supplier is best qualified to furnish electric service to the site designated in the application, and which supplier can best develop electric service in the area in which the site is located without wasteful duplication of investment or service. A certain amount of judgment and discretion must be allowed the Commission in making this decision. The Commission's order may not be arbitrary, capricious or unreasonable, but where there is substantial evidence from which to draw reasonably the inference of existence of the facts necessary to support the finding on the question

of public convenience and necessity, the order of the Commission wll not be found to be arbitrary, capricious or unreasonable. *Application of Otter Tail Power Company,* 169 N.W.2d 415 (N.D.1969).

In *Johanneson, supra,* we said at 153 N. W.2d 423:

"The legislation here under consideration is not found to be arbitrary or discriminatory in the sense that it is in violation of constitutional restrictions, and the contention that the law disregards customer preference is without merit."

However, customer preference does not govern the Commission in its decision but subjects the customer's preference for a regulated public utility service to an inquiry and decision by the Commission on the question of public convenience and necessity. Thus the law treats all alike and there is no discrimination which would invoke the equal protection and due process clauses of the constitution.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, KNUDSON and VOGEL, JJ., concur.