CAPITAL ELECTRIC COOPERATIVE,
INC., Respondent and Appellee,

v.

PUBLIC SERVICE COMMISSION
OF the STATE of NORTH
DAKOTA, Respondent,

and

Montana–Dakota Utilities Co., a Division
of MDU Resources Group, Inc.,
Applicant and Appellant.

Civ. No. 940401.

Supreme Court of North Dakota.

July 3, 1995.

Jan M. Sebby (argued), Pringle & Herigstad, PC, Minot, for respondent and appellee.

William P. Pearce (argued), Pearce & Durick, Bismarck, and Douglas W. Schulz (appearance), MDU Resources Group, Inc., Bismarck, for applicant and appellant.

NEUMANN, Justice.

This appeal involves a dispute under the Territorial Integrity Act, N.D.C.C. §§ 49–03–01 et seq., over an extension of electric service to a new customer located outside municipal corporate limits. The disputants are Capital Electric Cooperative, Inc. (Capital Electric), a rural electric cooperative, and Montana–Dakota Utilities Co. (MDU), an electric public utility [1] regulated under the Territorial Integrity Act. The North Dakota Public Service Commission (PSC) granted MDU's application for a certificate of public convenience and necessity to serve the customer. The district court reversed the PSC order because it granted the certificate with-out a customer request for service from MDU. MDU appealed the district court judgment. We affirm.

In October 1992, the North Dakota Department of Transportation (DOT) applied to Capital Electric for electric service for a headbolt heater in a DOT tractor at a storage shed at Sterling, an unincorporated community in Burleigh County. The parties agree the DOT location is outside the corporate limits of a municipality under N.D.C.C. § 49–03–01.1. Capital Electric serves rural electric customers in the Sterling area, and in October 1993, Capital Electric constructed a 1,450 foot line from an existing service line west of Sterling to the DOT location. In November 1993, Capital Electric began providing electric service to the DOT location.

Since 1928, MDU and its predecessor have provided central station electric service to Sterling under a certificate of need issued by the PSC's predecessor, the Board of Railroad Commissioners. MDU also provides electric service to Sterling under a municipal street lighting agreement with the Sterling Township Board. MDU's central station electric system is 335 feet from the DOT location, and MDU has an alternate point of service 250 feet from the DOT location.

In December 1993, MDU applied to the PSC under N.D.C.C. § 49–03–01.1 for a certificate of public convenience and necessity to extend service to the DOT location. Capital Electric moved to dismiss MDU's application, contending the PSC lacked jurisdiction under the Territorial Integrity Act because no customer had requested electric service from MDU. Although the DOT initially requested service from Capital Electric, evidence presented at the PSC hearing on MDU's application established the DOT did not have a preference for service from either Capital Electric or MDU. The PSC, with one Commissioner dissenting, denied Capital Electric's motion to dismiss and granted MDU's application for a certificate of public conve-

---

1. For purposes of N.D.C.C. §§ 49–03–01 through 49–03–01.5, an "electric public utility" means "a privately owned supplier of electricity offering to supply or supplying electricity to the general public," and a "rural electric cooperative" includes "any electric cooperative organized under chapter 10–13. An electric cooperative, composed of members as prescribed by law, shall not be deemed to be an electric public utility." N.D.C.C. § 49–03–01.5.

nience and necessity to extend electric service to the DOT location.

Capital Electric appealed to the district court, which reversed the PSC's denial of Capital Electric's motion to dismiss. The court held the PSC lacked jurisdiction to entertain MDU's application, because the "Territorial [Integrity] Act has long been construed to require a customer's preference for regulated public utility service before the PSC exercises jurisdiction. During this period the legislature has not interfered and in fact this is a sign of acquiescence in such construction." MDU appealed from the district court judgment.

MDU contends the district court erred in holding the PSC did not have jurisdiction under N.D.C.C. § 49–03–01.1 to entertain MDU's application, because the Act does not specifically require a customer request before the PSC can consider an application from a regulated public utility to extend electric service outside the corporate limits of a municipality. Capital Electric responds that a new customer's request for electric service from a regulated public utility is necessary to invoke the PSC's jurisdiction.

 Jurisdiction is the power to hear and determine a proceeding. *See Rudnick v. City of Jamestown,* 463 N.W.2d 632 (N.D. 1990). The PSC has only the powers and duties conferred upon it by the Legislature. N.D. Const., Art. V, §§ 12, 13; *Cass County Electric Coop., Inc. v. Northern States Power Co.,* 518 N.W.2d 216 (N.D.1994). Our analysis focuses on the statutory framework for resolving electric service disputes under the Territorial Integrity Act.

 In construing the Act, our duty is to ascertain the intent of the Legislature. *County of Stutsman v. State Historical Society,* 371 N.W.2d 321 (N.D.1985). Statutes must be construed as a whole to determine the legislative intent, and they must be harmonized, if possible, to give full force and effect to each provision. *Cass County Electric Coop., Inc. v. Northern States Power Co.,* 419 N.W.2d 181 (N.D.1988).

Before 1965, a rural electric cooperative was authorized to provide electric service in rural areas, *see* N.D.C.C. ch. 10–13, and an electric public utility could, without obtaining a certificate of public convenience and necessity, extend its service into "territory contiguous to that already occupied by it and not receiving similar service from another utility, or electric cooperative." 1959 N.D.Laws ch. 342, § 1.[2] *See also* N.D.R.C. of 1943 § 49–0301 (1957 Supp.); *Cass County Electric Coop., Inc. v. Otter Tail Power Co.,* 93 N.W.2d 47 (N.D.1958); *Williams Electric Coop., Inc. v. Montana–Dakota Utilities Co.,* 79 N.W.2d 508 (N.D.1956). Under that law, the PSC generally did not have authority to consider an electric public utility's extension of service into a "contiguous" rural area, *Application of Otter Tail Power Co.,* 169 N.W.2d 415, 417 (N.D.1969), and territorial disputes were usually resolved by the customer's preference. *Cass County Electric Coop., Inc. v. Otter Tail Power Co., supra.*

**2.** 1959 N.D.Laws ch. 342, § 1 said in part:

"49–0301. Certificate of Public Convenience and Necessity; Secured by Public Utility.
"No public utility henceforth shall begin in the construction or operation of a public utility plant or system or extension thereof, without first obtaining from the commission a certificate that public convenience and necessity require or will require such construction and operation. This section shall not be construed to require any such public utility to secure such certificate for:
"1. An extension within any municipality or district within which it has lawfully commenced operations;
"2. An extension within or to territory already served by it necessary in the ordinary course of its business; or

"3. An extension into territory contiguous to that already occupied by it and not receiving similar service from another utility, or electric cooperative corporation or if no certificate of public convenience and necessity has been issued to any other public utility.
"... If any public utility in constructing or extending its line, plant, or system, unreasonably interferes with or is about to interfere unreasonably with the service or system of any other public utility, or any electric cooperative corporation, the commission on complaint of the public utility or the electric cooperative corporation claiming to be injuriously affected, after notice and hearing as provided in this title, may make such order enforcing this section with respect to such public utility and prescribe such terms and conditions as are just and reasonable."

In 1965 the Legislature enacted the Territorial Integrity Act, 1965 N.D.Laws ch. 319, to require an electric public utility to obtain a certificate of public convenience and necessity before extending electric service outside the corporate limits of a municipality. N.D.C.C. §§ 49–03–01 and 49–03–01.1.[3] The Act was adopted at the request of the North Dakota Association of Rural Electric Cooperatives to provide "territorial protection" for rural electric cooperatives and to prevent public utilities from "pirating" rural areas. Prepared Testimony of Clarence Welander, Chairman of North Dakota Association of Rural Electric Cooperatives, February 25, 1965 Minutes of Senate Industry, Business and Labor Committee regarding House Bill 724. The primary purpose of the Act was to minimize conflicts between suppliers of electricity and wasteful duplication of investment in capital-intensive utility facilities. *Cass County Electric Coop., Inc. v. Northern States Power Co.*, 419 N.W.2d 181 (N.D. 1988).

Under the Act, an electric public utility must secure a certificate of public convenience and necessity from the PSC before extending service to new customers out-side the corporate limits of a municipality; however, rural electric cooperatives may extend service to new customers in rural areas without securing a certificate of public convenience and necessity from the PSC. *Cass County Electric Coop., Inc. v. Wold Properties, Inc.*, 249 N.W.2d 514 (N.D.1976); *Tri–County Electric Coop., Inc. v. Elkin*, 224 N.W.2d 785 (N.D.1974); *Montana–Dakota Utilities Co. v. Johanneson*, 153 N.W.2d 414 (N.D.1967). Although we have never said the Act gives rural electric cooperatives a preference for electric service in rural areas, it does allow cooperatives to serve customers in rural areas unless an electric public utility obtains a certificate of public convenience and necessity from the PSC. *Wold Properties, supra; Application of Otter Tail Power Co., supra.*

As originally enacted, section 3 of the Act precluded the PSC from issuing a certificate of public convenience and necessity to an electric public utility to extend its service beyond the corporate limits of any municipality unless the rural electric cooperative nearest the proposed service area consented to the extension. 1965 N.D.Laws ch. 319, § 3.[4]

---

3. Section 49–03–01, N.D.C.C., says:

"*Certificate of public convenience and necessity—Secured by electric public utility.*—No electric public utility henceforth shall begin construction or operation of a public utility plant or system, or of an extension of a plant or system, except as provided below, without first obtaining from the commission a certificate that public convenience and necessity require or will require such construction and operation. This section does not require an electric public utility to secure a certificate for an extension within any municipality within which it has lawfully commenced operations. If any electric public utility in constructing or extending its line, plant, or system, unreasonably interferes with or is about to interfere unreasonably with the service or system of any other electric public utility, or any electric cooperative corporation, the commission, on complaint of the electric public utility or the electric cooperative corporation claiming to be injuriously affected, after notice and hearing as provided in this title, may order enforcement of this section with respect to the offending electric public utility and prescribe just and reasonable terms and conditions."

Section 49–03–01.1, N.D.C.C., says:

"*Limitation on electric transmission and distribution lines, extensions and service by electric public utilities.*—No electric public utility henceforth shall begin in the construction or operation of a public utility plant or system or extension thereof without first obtaining from the commission a certificate that public convenience and necessity require or will require such construction and operation, nor shall such public utility henceforth extend its electric transmission or distribution lines beyond or outside of the corporate limits of any municipality, nor shall it serve any customer where the place to be served is not located within the corporate limits of a municipality, unless and until, after application, such electric public utility has obtained an order from the commission authorizing such extension and service and a certificate that public convenience and necessity require that permission be given to extend such lines and to serve such customer."

4. 1965 N.D.Laws ch. 319, § 3, said:

"*§ 3. Limitation on Issuance of Orders and Certificates of Public Convenience and Necessity to Electric Public Utilities.)* The public service commission of the state of North Dakota shall not issue its order or a certificate of public convenience and necessity to any electric public utility to extend its electric distribution lines beyond the corporate limits of a municipality or to serve a customer whose place to be

In *Johanneson, supra,* we held section 3 was unconstitutional, because it delegated legislative powers to cooperatives to determine who furnished electric service in rural areas. However, after explaining the differences between electric public utilities and rural electric cooperatives, we concluded there was a valid justification for the different treatment of public utilities and cooperatives regarding regulation of service in rural areas. We therefore held the remainder of the Act did not unlawfully discriminate against public utilities and was constitutional. We also concluded that the unconstitutional provision, section 3, was severable from the remainder of the Act.

■ The Territorial Integrity Act therefore explicitly gives the PSC jurisdiction to hear and determine an electric public utility's application for a certificate of public convenience and necessity to extend service to areas outside the corporate limits of a municipality. However, the narrower issue in this case is not whether the PSC has such jurisdiction, but whether the Act requires a customer request for electric service from a public utility in order to invoke the PSC's jurisdiction.

In *Application of Otter Tail Power Co., supra,* we outlined criteria for the PSC to consider in rendering a decision on an electric public utility's application for a certificate of public convenience and necessity. In that case, a customer asked an electric public utility to provide service to a rural area, and the utility applied to the PSC for a certificate. We said customer preference for service by the electric public utility was not determinative of public convenience and necessity, but should be considered along with:

"the location of the lines of the suppliers; the reliability of the service which will be rendered by them; which of the proposed suppliers will be able to serve the area more economically and still earn an ade-

quate return on its investment; and which supplier is best qualified to furnish electric service to the site designated in the application and which also can best develop electric service in the area in which such site is located without wasteful duplication of investment or service."

*Application of Otter Tail Power Co.,* 169 N.W.2d at 418.

In *Application of Montana–Dakota Utilities Co.,* 219 N.W.2d 174 (N.D.1974), we again considered the effect of a rural customer's preference for service from an electric public utility. We said a rural customer does not have a constitutional right to receive electric service from a public utility. We reiterated that customer preference was not determinative of public convenience and necessity, but "subjects the customer's preference for a regulated public utility service to an inquiry and decision by the Commission on the question of public convenience and necessity." *Id.* at 181. *See also Elkin,* 224 N.W.2d at 792 (customer preference invokes consideration by the PSC, but is not determinative of public convenience and necessity).

In *Wold Properties, supra,* a customer outside the corporate limits of a municipality initially received service from an electric public utility and sought to change suppliers to a rural electric cooperative. We concluded the public utility had the right to serve the customer to the exclusion of the cooperative because the utility held an unrevoked certificate of public convenience and necessity. We repeated that customer preference was not determinative of public convenience and necessity; instead, it warranted further inquiry and a decision by the PSC on that issue.

None of our prior cases have involved an electric public utility's extension of new service to an area outside the corporate limits of a municipality without a customer request for

---

served is located outside the corporate limits of a municipality unless the electric co-operative corporation with lines or facilities nearest the place where service is required shall consent in writing to such extension by such electric public utility, or unless, upon hearing before the commission, called upon notice, it shall be shown that the service required cannot be pro-

vided by an electric co-operative corporation. Such certificate shall not be necessary if the public service commission approves an agreement between a public utility and the rural electric co-operative serving the area which includes the station to be served and which agreement designates said station to be in an area to be served by the public utility."

service from the utility. Although MDU relies heavily upon *Wold Properties, supra*, to support its position that a customer request for public utility service is not necessary to invoke the PSC's jurisdiction, that case involved an existing customer's attempt to change suppliers from a public utility to a rural electric cooperative, not a new customer's request for service from a rural electric cooperative. *Wold Properties, supra*, is distinguishable from this case.

■ The Act specifically authorizes the PSC to regulate an electric public utility's extension of service to areas outside the corporate limits of any municipality, and does not specifically require a new customer's request for service by a public utility in order to invoke the PSC's jurisdiction. N.D.C.C. §§ 49–03–01 and 49–03–01.1. However, the Act does not authorize the PSC to regulate rural electric cooperatives; instead, it allows cooperatives to extend electric service to customers in rural areas without obtaining a certificate of public convenience and necessity. Under our prior decisions, customer preference for service by an electric public utility is one factor bearing on the determination of public convenience and necessity. Those decisions do not mean, however, that a rural customer's request for new electric service from a public utility is not necessary to invoke PSC consideration of public convenience and necessity. We believe our prior decisions on customer preference and the statutory framework of the Act, as a whole, require a request by a new customer for electric service from a public utility before the PSC can consider whether to issue a certificate of public convenience and necessity to the utility.

Construing the Act otherwise would unduly infringe upon an electric cooperative's statutory right to extend service in rural areas without obtaining a certificate of public convenience and necessity and would authorize electric public utilities to extend service to areas outside the corporate limits of a municipality without a new customer's request for service. That interpretation is contrary to the purposes of the Act to minimize conflicts between electric public utilities and rural electric cooperatives and to provide territorial protection for rural electric cooperatives. It also would not give full force and effect to the entire Act, because it would indirectly subject a rural electric cooperative's extension of service in rural areas to regulation by the PSC. We do not believe the Legislature intended that result when it adopted the Act.

Our interpretation of the Act also is consistent with the PSC's prior construction. Before 1993, the PSC had effectively construed the Act to require a customer request for service by a regulated public utility in order to invoke the PSC's jurisdiction to decide the issue of public convenience and necessity. However, in 1993, the PSC changed its construction of the Act so that a customer request for service by a public utility was no longer deemed necessary to invoke the PSC's jurisdiction to determine public convenience and necessity. We decline to defer to the PSC's recent reinterpretation of its authority, because that construction contravenes the statutory framework and purpose of the Act. *See W.W. Wallwork, Inc. v. Duchscherer*, 501 N.W.2d 751 (N.D.1993) (administrative regulation that contravenes statutory language is invalid and not entitled to deference). Instead, we believe the PSC's prior longstanding interpretation of the Act is consistent with the language and purpose of the Act and has been acquiesced in by the Legislature. *Effertz v. North Dakota Workers Compensation Bureau*, 525 N.W.2d 691 (N.D. 1994) (Legislature is presumed to know the construction of statute by executive departments of the state and the failure to amend the statute indicates legislative acquiescence).

■ We hold that a new customer's request for service by an electric public utility is necessary to invoke the PSC's jurisdiction to consider the public utility's application for a certificate of public convenience and necessity to extend service to an area outside the corporate limits of a municipality.

We therefore affirm the district court judgment.

SANDSTROM and LEVINE, JJ., and KIRK SMITH, District Judge, concur.

KIRK SMITH, District Judge, sitting in place of MESCHKE, J., disqualified.

SANDSTROM, Justice, concurring.

I agree with the majority opinion. I write separately in response to the Chief Justice's suggestion the legislature could clarify the meaning of the statute. That is certainly an option in the hands of others. In the meantime, I note:

"We have often held that in construing a statute of doubtful meaning the court will give weight to the long-continued, practical construction placed thereon by the officers charged with the duty of executing and applying the statute. *Giese v. Engelhardt,* 175 N.W.2d 578 (N.D.1970); *Blair v. City of Fargo,* 171 N.W.2d 236 (N.D.1969), *cert. denied,* 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 397 (1970); *Walker v. Weilenman,* 143 N.W.2d 689 (N.D.1966); *State Tax Commissioner v. Tuchscherer,* 130 N.W.2d 608 (N.D.1964)."

*Horst v. Guy,* 219 N.W.2d 153, 159 (N.D. 1974).

The long-established, practical construction of the agency required a customer request.

LEVINE, J., concurs.

VANDE WALLE, Chief Justice, concurring in result.

Presumably the money Capital Electric spent in constructing a 1,450 foot line to serve the DOT location, the money MDU spent in applying for a certificate of public convenience and necessity to serve the same location, the money Capital Electric spent in opposing MDU's application and the money both Capital Electric and MDU spent in appeals to the district court and this Court have more significance than to determine whether Capital Electric or MDU will provide electricity for a headbolt heater!

My impression is that the money was spent because each party is concerned the other party will get a "leg up" in the construction and application of so called Territorial Integrity Law. If that be so, there must be a better way to resolve the meaning of the statutes. A legislative clarification might be one. When there is discussion of reduced federal funds available for rural electric cooperatives and consumers are complaining because public utility electric rates are too high, reasonable people should be able to find better and less expensive methods of resolving these long-standing disputes as to the authority to provide electric service. Nevertheless, the money has been spent and the dispute is before us for resolution. I agree with the result reached by the majority but for different reasons.

At the time MDU applied for a certificate of public convenience and necessity to provide electricity for the headbolt heater at the DOT site, Capital Electric had completed the 1,450 foot extension of its line and was providing service to the site. Service was being provided in accordance with the law. Under those circumstances, the PSC should have denied MDU's request. Whether Capital Electric was well advised to construct the line for this limited service is not material for our purposes, because under the current law it was permitted to do so. Whether the law should be amended to avoid an expenditure of this size to serve a limited need when closer service is available at presumably less cost is a matter for legislative determination.

I am skeptical of, and do not embrace, the majority's attempted fine-line distinction between the PSC's jurisdiction to hear a matter and its authority to consider public convenience and necessity. The distinction is, to me, without a difference. Indeed, I agree that whether or not a customer has requested service is a significant piece of evidence in determining whether or not public convenience and necessity requires a certificate to serve, but it is not conclusive. In this instance, the better rationale is that service was being legally provided so there was no need for the certificate.

I assume the majority's attempted distinction is made because *Montana–Dakota Utilities Co. v. Johanneson,* 153 N.W.2d 414 (N.D. 1967) held unconstitutional as an invalid delegation of legislative powers to determine who furnished electrical service in rural areas, a provision that required the rural electric's consent before a public utility could extend electric service to an area beyond the corporate limits of the municipality. But I see no substantial difference in requiring a custom-

er request as a condition precedent to determining whether public convenience and necessity requires such service. In either instance there is a delegation of authority. The majority's interpretation as well as the PSC's prior construction that a customer request for service by a public utility is necessary in order to invoke the PSC's jurisdiction to determine public convenience and necessity answers a question not necessary to decide in this case and does so in a manner which raises constitutional questions, in view of *Montana–Dakota Utilities Co. v. Johanneson, supra.*[1]

Ordinarily the question of a certificate of public convenience and necessity will not arise without a customer request, i.e., if no customer no necessity for service. However, I believe lack of a request is an evidentiary

rather than a jurisdictional matter, particularly in view of *Montana–Dakota Utilities Co. v. Johanneson, supra,* and *Application of Montana–Dakota Utilities Co.,* 219 N.W.2d 174 (N.D.1974) holding that customer preference does not govern the PSC in its decision.

Because the evidence reveals that electricity was being provided for the headbolt heater within the law, there was no need for the certificate of public convenience and necessity. I concur in the result.

---

1. Justice Teigen dissented. He construed the statutes so that electric service could not be provided by an electric cooperative if the potential customer for central-station service refused to contract with the cooperative.