# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 225

Nodak Electric Cooperative, Inc.,  Appellant and Cross-Appellee

v.

North Dakota Public Service Commission,

and City of Drayton,  Appellees

and

Otter Tail Power Company,  Appellee and Cross-Appellant

## No. 20220122

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Douglas A. Bahr, Judge.

REVERSED AND VACATED.

Opinion of the Court by Crothers, Justice.

Kimberly J. Radermacher, Edgeley, ND, for for appellant and cross-appellee.

Paul R. Sanderson (argued), Bismarck, ND, and Robert M. Endris (appeared), Fergus Falls, MN, for appellee Otter Tail Power Company.

Brian L. Johnson, Special Assistant Attorney General, Bismarck, ND, for appellee North Dakota Public Service Commission.

Steven C. Ekman (on brief), Grafton, ND, for appellee City of Drayton.

Stephanie D. Engebretson (on brief), Bismarck, ND, for amicus curiae North Dakot League of Cities.

**Crothers, Justice.**

[¶1]   Nodak Electric Cooperative, Inc., appeals, and Otter Tail Power Company cross-appeals, from a district court judgment affirming the Public Service Commission's order relating to electric service in the City of Drayton. We reverse the judgment and vacate the PSC's order, concluding the PSC lacked jurisdiction to rule on Nodak's complaint.

I

[¶2]   Otter Tail provides electric service to Drayton under a franchise agreement. In August 2019, Drayton annexed to the city property known as McFarland's Addition. In November 2019, an entity purchased a portion of McFarland's Addition with the intention of building a truck stop. In April 2020, Drayton passed a resolution requiring Otter Tail to provide electric service to McFarland's Addition.

[¶3]   Nodak provides electric service to rural customers outside of Drayton. Nodak does not provide service to any customers in McFarland's Addition; however, it has a line running across the south side of McFarland's Addition. Nodak does not have a franchise from Drayton to provide electric service in the city.

[¶4]   In July 2020, Nodak filed a complaint against Otter Tail, requesting the PSC to prohibit Otter Tail from extending electric service to McFarland's Addition. Nodak alleged Otter Tail's service would interfere with Nodak's existing service and be an unreasonable duplication of services. In response, Otter Tail claimed the PSC lacked jurisdiction over Drayton's decision on which provider could extend service within the city.

[¶5]   Otter Tail moved to dismiss Nodak's complaint, arguing Drayton had a constitutional right to choose which service provider to use. Otter Tail claimed N.D. Const. art. VII, § 11, grants Drayton the exclusive authority to franchise electric service within the city. Otter Tail asserted Nodak's complaint with the PSC invited the PSC to invalidate the franchise between Otter Tail and

Drayton for electric service within the city. Otter Tail argued the PSC lacked authority to grant Nodak its requested relief of providing electric service in Drayton because Nodak lacked a franchise to provide service in Drayton.

[¶6]   After a hearing, the PSC denied Otter Tail's motion to dismiss, denied the relief sought in Nodak's complaint and dismissed the complaint. The PSC concluded Otter Tail's extension into McFarland's Addition would not cause interference with Nodak's service and would not result in unreasonable duplication of services. Nodak appealed the PSC's decision to the district court. Otter Tail cross-appealed. The court affirmed the PSC's decision. Nodak appeals and Ottertail cross-appeals the district court's judgment.

II

[¶7]   An appeal from a decision of the PSC is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. *Cap. Elec. Coop., Inc. v. City of Bismarck*, 2007 ND 128, ¶ 30, 736 N.W.2d 788. In an appeal to this Court from a district court's decision on an appeal from a PSC decision, this Court reviews the PSC's order in the same manner as the district court. N.D.C.C. § 28-32-49. Under N.D.C.C. § 28-32-46, the district court must affirm the PSC's order unless:

> "1. The order is not in accordance with the law.
> 2. The order is in violation of the constitutional rights of the appellant.
> 3. The provisions of this chapter have not been complied with in the proceedings before the agency.
> 4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
> 5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
> 6. The conclusions of law and order of the agency are not supported by its findings of fact.
> 7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
> 8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

2

The PSC's decision on questions of law is fully reviewable. *Cap. Elec.*, at ¶ 31.

## III

[¶8] Otter Tail and Drayton claim the constitution grants Drayton the exclusive authority to franchise electric service. They argue the PSC did not have jurisdiction to rule on the merits of Nodak's complaint because Nodak lacked a franchise to provide electric service in Drayton.

[¶9] Article VII, § 11, N.D. Const., provides, "The power of the governing board of a city to franchise the construction and operation of any public utility or similar service within the city shall not be abridged by the legislative assembly." *See also* N.D.C.C. § 40-05-01(57) (stating municipalities have the power "[t]o grant franchises or privileges to persons, associations, corporations, or limited liability companies.").

[¶10] The PSC's jurisdiction is limited to that provided by the legislature. *Env't L. & Pol'y Ctr. v. N.D. Pub. Serv. Comm'n*, 2020 ND 192, ¶ 11, 948 N.W.2d 838; *Cap. Elec. Co-op., Inc. v. Pub. Serv. Comm'n of State of N.D.*, 534 N.W.2d 587, 589 (N.D. 1995). The term "jurisdiction" has three components in the administrative context:

> "(1) personal jurisdiction, referring to the agency's authority over the parties and intervenors involved in the proceedings; (2) subject matter jurisdiction, referring to the agency's power to hear and determine the causes of a general class of cases to which a particular case belongs; and (3) the agency's scope of authority under statute."

*Env't L. & Pol'y Ctr.*, at ¶ 11. A party may raise the issue of subject matter jurisdiction at any time. *Great Plains Royalty Corp. v. Earl Schwartz Co.*, 2021 ND 62, ¶ 12, 958 N.W.2d 128. When raised, the jurisdictional issue is predominant:

> "Jurisdiction precedes adjudication. Before a court may say anything worth listening to regarding the (de)merits of a party's claim, that court must have authority to speak. That court has such authority only when the claim is one within the court's subject matter jurisdiction and *after* the court has acquired personal

3

> jurisdiction of the parties. If the court is without jurisdiction—subject matter or personal—no one is bound by anything the court may say regarding the (de)merits of the case."

*Smith v. City of Grand Forks*, 478 N.W.2d 370, 373 (N.D. 1991) (quoting *Petters v. Petters*, 560 So.2d 722, 723 (Miss. 1990)).

[¶11] Chapter 49-03, N.D.C.C., governs electric utility franchises and is known as the Territorial Integrity Act. *Cap. Elec. Co-op., Inc.*, 534 N.W.2d at 588. As defined in the Act, Otter Tail is an "electric public utility," and Nodak is a "rural electric cooperative." N.D.C.C. §§ 49-03-01.5(2) and (6). Both entities are "electric providers" under N.D.C.C. § 49-03-01.5(1).

[¶12] Under the Act, an electric public utility must obtain a certificate of public convenience and necessity from the PSC before extending electric service outside a municipality. *Cap. Elec. Co-op., Inc.*, 534 N.W.2d at 590; N.D.C.C. §§ 49-03-01 and 49-03-01.1. The Act "explicitly gives the PSC jurisdiction to hear and determine an electric public utility's application for a certificate of public convenience and necessity to extend service to areas outside the corporate limits of a municipality." *Cap. Elec. Co-op., Inc.*, at 591.

[¶13] An electric public utility need not obtain a certificate of public convenience and necessity to extend its electric service within a city's corporate limits where it has commenced lawful operations. N.D.C.C. § 49-03-01.3. However, a public utility's extension within a city's corporate limits "shall not interfere with existing services provided by a rural electric cooperative or another electric public utility within such municipality; and provided duplication of services is not deemed unreasonable by the commission." *Id.* If an electric public utility "interferes with or threatens to interfere with the service or system of any other electric public utility or rural electric cooperative," the aggrieved party may file a complaint with the PSC. N.D.C.C. §§ 49-03-01.4(1) and 49-03-05. After notice and hearing, the PSC may restrain or enjoin the electric public utility "from constructing or extending its interfering lines, plant, or system." N.D.C.C. § 49-03-01.4(1). The concluding sentence of N.D.C.C. ch. 49-03 provides, "Nothing in this chapter shall be construed to limit the authority of a governing board of a city to exercise its franchise authority under section 40-05-01." N.D.C.C. § 49-03-06(8).

4

[¶14] Here, Otter Tail lawfully provides Drayton electric service under a franchise agreement. After the annexation of McFarland's Addition, Drayton passed a resolution stating "Otter Tail Power Company is obligated under its existing franchise agreement to provide electrical service to McFarland's Addition." Nodak filed a complaint against Otter Tail, alleging Otter Tail's proposed extension of service to McFarland's Addition would interfere with Nodak's existing service and be an unreasonable duplication of services.

[¶15] The PSC declined to address Otter Tail's motion to dismiss and constitutional argument, concluding "[s]uch determination may be better suited for [the] judiciary to decide." The PSC further concluded, "However, N.D.C.C. § 49-03-01.3 provides that the Commission has jurisdiction to prevent interference with existing services and unreasonable duplication caused by an electric utility extension." The district court also declined to address Otter Tail's constitutional argument, concluding "this Court reviews the Commission's Order and the Commission's Order does not address those issues." The court concluded Nodak's appeal could be resolved on the merits without addressing the constitutional issue.

[¶16] Otter Tail and Drayton claim N.D. Const. art. VII, § 11 grants Drayton the exclusive authority to franchise electric service. They contend that because Nodak does not provide electric service to McFarland's Addition or have a franchise to provide electric service in Drayton, the PSC lacked authority to rule on the merits of Nodak's complaint. Otter Tail and Drayton do not argue the Territorial Integrity Act is unconstitutional; rather, the Act must be read in conjunction with a city's constitutional authority to franchise electric service. Otter Tail argues the PSC has jurisdiction to hear the complaint only if both Otter Tail and Nodak are authorized to provide electric service in the city. We agree.

[¶17] In *Cap. Elec. Coop., Inc. v. City of Bismarck,* 2007 ND 128, ¶ 5, Montana-Dakota Utilities Company (MDU), an electric public utility, and Capital Electric Cooperative, a rural electric cooperative, sought to extend electric service to an annexed area of Bismarck. Both electric providers had franchises to provide electric service within Bismarck. *Id.* at ¶¶ 2-3. Bismarck decided MDU was entitled to provide service to the annexed area. *Id.* at ¶ 6. Capital

5

Electric filed a complaint with the PSC, seeking to enjoin MDU from providing service to the annexed area. *Id.* at ¶ 8. After a hearing PSC decided Capital Electric was entitled to provide service to the annexed area. *Id.*

[¶18] On appeal, we recognized a city's constitutional and statutory franchise authority. *Cap. Elec.*, 2007 ND 128, ¶ 12 (citing N.D. Const. art. VII, § 11 and N.D.C.C. § 40-05-01(57)). After recognizing both MDU and Capital Electric had franchises to provide electric service in Bismarck, we stated:

> "Under North Dakota law, Capital Electric must have a franchise to serve Boulder Ridge after that area was annexed to Bismarck. *See Montana-Dakota Utils. Co. v. Divide County Sch. Dist.*, 193 N.W.2d 723, 730-31 (N.D. 1971) (holding right of electric cooperative without franchise to provide electric service to area outside city terminated when area became annexed to city that required franchise to provide service within city). If both MDU and Capital Electric have franchises to provide electric service to Boulder Ridge, the PSC has authority to decide whether either entity's extension of services in Boulder Ridge will unreasonably interfere with and duplicate services of the other under N.D.C.C. § 49-03-01.3 and this Court's decisions culminating in *Cass County Elec. Coop. v. N.S.P.*, 419 N.W.2d 181 (N.D. 1988), and *N.S.P. v. P.S.C.*, 452 N.W.2d 340 (N.D. 1990). In *Cass County Elec. Coop.*, 419 N.W.2d at 183, both a public utility and a rural electric cooperative were authorized by the City of Fargo to serve the South Pointe area that had been annexed to Fargo. This Court decided the PSC must look at both entities' existing facilities in the entire surrounding area to determine whether the public utility's extension of services into South Pointe would constitute an unreasonable duplication of capital-intensive facilities and services already provided by the rural electric cooperative and remanded for further proceedings. *Id.* at 187. After remand, this Court held that a preponderance of evidence supported the PSC's decision that the public utility's extension of services into the South Pointe area was a duplication of the electric cooperative's facilities in the area. *N.S.P.*, 452 N.W.2d at 345.
>
> . . .
>
> "We conclude the 'non-exclusive' franchises, when construed as a whole and in conjunction with the area service agreement,

6

authorize both Capital Electric and MDU to provide electric service in Bismarck as 'now, or hereafter constituted' and Capital Electric's franchise does not preclude it from serving Boulder Ridge. The practical effect of interpreting the franchises to give both Capital Electric and MDU a franchise in the Boulder Ridge area is that the issue of unreasonable duplication is subject to the jurisdiction of the PSC under N.D.C.C. § 49-03-01.3 and this Court's decisions culminating in *Cass County Elec. Coop.*, 419 N.W.2d at 181, and *N.S.P.*, 452 N.W.2d at 340. In the absence of any explicit language providing otherwise, we believe that interpretation ultimately favors the public's interest in preventing unreasonable duplication of facilities, while recognizing a municipality's constitutional authority to grant a franchise. That interpretation does not interfere with Bismarck's constitutional authority to issue a utility franchise; rather, that interpretation recognizes that Bismarck has granted both Capital Electric and MDU a franchise for Boulder Ridge."

*Cap. Elec.*, at ¶¶ 13, 27. This Court concluded both MDU and Capital Electric had a franchise to serve the annexed area of Bismarck, and the PSC had jurisdiction to hear Capital Electric's complaint and decide the issue of unreasonable duplication of services under N.D.C.C. § 49-03-01.3. *Cap. Elec.*, at ¶¶ 13, 27. We interpreted the PSC's authority to decide disputes arising under N.D.C.C. § 49-03-01.3 to avoid conflict with Bismarck's constitutional authority to franchise public utilities. *Cap. Elec.*, at ¶ 27.

[¶19] Under the Territorial Integrity Act, the PSC has jurisdiction when an electric public utility proposes to extend electric service outside the corporate limits of a municipality. *Cap. Elec. Co-op., Inc. v. Pub. Serv. Comm'n of State of N.D.,* 534 N.W.2d at 591; N.D.C.C. §§ 49-03-01 and 49-03-01.1. However, when a public utility extends electric service within a city's limits, the PSC's jurisdiction is limited by the city's constitutional authority to franchise electric service. If the utility's extension threatens to interfere with another electric provider's authorized service within the city, the PSC has jurisdiction to decide whether there would be interference or an unreasonable duplication of services. *Cap. Elec.*, 2007 ND 128, ¶ 27; N.D.C.C. § 49-03-01.3.

[¶20] Here, Drayton exercised its constitutional franchise authority and contracted with Otter Tail to provide electric service in the city. Nodak does not

7

have a franchise to provide service in Drayton, nor did it provide service to McFarland's Addition. After Drayton annexed McFarland's Addition, Drayton passed a resolution obligating Otter Tail to provide service to McFarland's Addition under the existing franchise agreement. *See Montana-Dakota Utils. Co. v. Divide Cty. Sch. Dist.*, 193 N.W.2d at 729 (stating a city's powers are extended to annexed property).

[¶21] Otter Tail is not extending its service outside Drayton's city limits under N.D.C.C. § 49-03-01.1. Additionally, Otter Tail's extension will not interfere with another existing lawful service nor be an unreasonable duplication of services under N.D.C.C. § 49-03-01.3 because Nodak does not provide electric service to McFarland's Addition or have a franchise with Drayton. Therefore, the PSC was without jurisdiction under N.D.C.C. ch. 49-03 to hear Nodak's complaint.

[¶22] Otter Tail's motion to dismiss should have been granted because the PSC did not have jurisdiction to hear Nodak's complaint. The district court erred in affirming the PSC's order because the "order [was] not in accordance with the law." N.D.C.C. § 28-32-46(1). Therefore, we reverse the judgment and vacate the PSC's order.

IV

[¶23]  We have considered the parties' remaining arguments and conclude they are either without merit or not necessary to our decision. We reverse the judgment and vacate the PSC's order.

[¶24]Jon J. Jensen, C.J.
      Gerald W. VandeWalle
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte

8